The PEOPLE of the State of Colorado, Complainant,

v.

Michael J. OGBORN, Attorney–Respondent.

No. 94SA239.

Supreme Court of Colorado, En Banc.

Dec. 19, 1994.

Linda Donnelly, Disciplinary Counsel, Kenneth B. Pennywell, Asst. Disciplinary Counsel, Denver, for complainant.

Michael D. Gross, Colorado Springs, for attorney-respondent.

## PER CURIAM.

The respondent [1] in these lawyer disciplinary proceedings converted a large amount of client funds by fraudulently billing and double-billing for expenses, including personal expenses. A hearing panel unanimously accepted the findings and recommendation of a hearing board that the respondent be disbarred and be ordered to pay costs. The respondent excepted to the panel's recommendation on the ground that disbarment was too severe a sanction given the circumstances in mitigation. We accept the panel's recommendation and order that the respondent be disbarred.

### I

The assistant disciplinary counsel and the respondent entered into an unconditional stipulation of facts. After considering the stipulation and the other exhibits tendered by the parties, and after listening to testimony from the witnesses, including two expert witnesses and the respondent, the board found that the following facts were established by clear and convincing evidence.

The respondent was a shareholder in the law firm of Harding and Ogborn, P.C. In 1984, the respondent agreed to move from the firm's Nebraska office to Denver, where he became managing partner. The respondent was responsible for the firm's administrative functions, including the review of bills submitted for expenses. The respondent was assigned as lead counsel for a large out-of-state utility company in an action before the Interstate Commerce Commission (I.C.C.). The utility company sought reimbursement for alleged railroad overcharges in an amount between fifty and one-hundred million dollars. The complex action had been pending before the I.C.C. since 1979, and entered a particularly active stage in 1989.

The respondent travelled frequently to Washington, D.C., and he maintained an apartment there. During the pendency of the I.C.C. proceedings, the utility company changed the fee agreement with the law firm in order to limit the maximum hours per day billed to it. The actual representation required the respondent to work a substantial number of hours which exceeded the maximum billable hours and the law firm was not compensated for his additional work.

The respondent was involved in another complex I.C.C. matter at the same time, as well as other activities, including adjunct teaching at the University of Denver College of Law, serving as an officer of the Transportation Lawyers Association, and serving on the board of directors of the Colorado Youth Symphony.

■ Between March 1990 and December 1991, the respondent submitted bills to the utility company for expenses unrelated to his representation of the company, including airline tickets for personal trips and personal hotel expenses for the respondent and members of his family, and gifts for family and friends. He billed the utility company for expenses that he incurred at educational seminars when such costs should instead have been borne by the law firm. The respondent also collected double reimbursement for numerous expenses incurred in representing the utility company.

The utility and the law firm only learned of the respondent's dishonest billing practices in 1992 when an inquiry from the utility prompted the firm to audit the respondent's expenses. The respondent was confronted with the law firm's findings in July 1992, and he was relieved of his duties as billing lawyer and was assigned no new clients. The respondent himself subsequently reported his misconduct to the grievance committee.

The respondent's law firm agreed to pay restitution, including interest, to the utility in the amount of $214,000. The respondent disputed this amount, and claimed that certain expenses for which the utility requested reimbursement actually were authorized, such as the first-class air fares. The respon-

---

1. The respondent was admitted to the bar of this court on July 12, 1985, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee in these proceedings.

C.R.C.P. 241.1(b). The respondent was immediately suspended from the practice of law on November 16, 1992, pending the resolution of these proceedings.

dent and law firm have agreed that the respondent will pay the firm $150,059.00, although the respondent's liability in the event of bankruptcy has not been resolved. As of the date of the hearing, the respondent had paid the law firm $62,990.00.

The respondent admitted that his conduct violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, ·fraud, deceit, or misrepresentation); DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law); and C.R.C.P. 241.6(3) (misconduct involving any act or omission violating the highest standards of honesty, justice or morality is grounds for discipline). The hearing board concluded that the respondent's conduct was "tantamount to theft" and that the respondent also violated C.R.C.P. 241.6(5) (any act or omission violating the criminal laws of a state or of the United States constitutes ground for lawyer discipline); and DR 2–106(A) (a lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee).

## II

The hearing panel approved the board's recommendation that the respondent be disbarred. One member of the board recommended that the respondent be suspended for three years. "When a lawyer knowingly converts client funds, disbarment is 'virtually automatic,' at least in the absence of significant factors in mitigation." *People v. Young,* 864 P.2d 563, 564 (Colo.1993) (knowing conversion of clients' funds warrants disbarment even absent prior disciplinary history and despite cooperation and making restitution). *See also People v. Robbins,* 869 P.2d 517, 518 (Colo.1994) (conversion of client trust funds warrants disbarment even if funds are restored before clients learn they are missing but not before the conversion is discovered by the lawyer's law firm); *People v. Robnett,* 859 P.2d 872, 878 (Colo.1993) (attorney disbarred for conversion of client funds and deception of client); *People v. Kearns,* 843 P.2d 1, 5 (Colo.1992); *People v. Finesilver,* 826 P.2d 1256, 1258 (Colo.1992) (conversion of trust funds and forging of court document

warrants disbarment); *People v. Whitcomb,* 819 P.2d 493 (Colo.1991) (conversion of trust funds warrants disbarment); *People v. Kramer,* 819 P.2d 77 (Colo.1991) (lawyer disbarred for obtaining loans by means of false and fictitious "investment plans"); *People v. Mulligan,* 817 P.2d 1028 (Colo.1991) (attorney disbarred for conversion of client funds); *People v. Calt,* 817 P.2d 969 (Colo.1991) (assisting client in fraudulent scheme to obtain funds from the client's employer warrants disbarment of the lawyer); *People v. Grossenbach,* 814 P.2d 810 (Colo.1991) (conversion of client funds and knowing deception of clients warrants disbarment).

Moreover, in the absence of mitigating circumstances, the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ) states that "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." ABA *Standards* 4.11.

The respondent contends that the presence of mitigating factors in this case does call for a sanction less than disbarment. In particular, the respondent asserts that the hearing board majority erred when it did not consider the respondent's mental illness as a mitigating factor under ABA *Standards* 9.32(i), which provides:

> (i) mental disability or chemical dependency including alcoholism or drug abuse [may be considered as a mitigating factor] when:
>
> (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
>
> (2) the chemical dependency or mental disability caused the misconduct;
>
> (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
>
> (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

ABA *Standards* 9.32(i) (Supp.1992). The hearing board listened to the testimony of two expert witnesses, both psychiatrists, one retained by the respondent and the other

offered by the assistant disciplinary counsel. The experts agreed that at the time of the misconduct, the respondent was suffering from an "adjustment disorder with mixed disturbance of emotions and conduct,"[2] brought on by the stresses of family and work. The psychiatrists also agreed that the respondent met the criteria of standard 9.32(i)(1), (3), and (4). The respondent's expert testified that the mental disability caused the misconduct, but the other psychiatrist stated that the disability could not be said to have caused the misconduct. Two members of the board accepted the latter psychiatrist's analysis and found that standard 9.32(i) was not present as a mitigating factor.

 When approved by the panel, the hearing board's factual findings are binding unless, after considering the record as a whole, the findings are not supported by substantial evidence. *People v. Phelps*, 837 P.2d 755, 755 n. 1 (Colo.1992). When the board acts as a fact finder, it has the duty to assess the credibility of the testimony and evidence before it. *Id.* We conclude that the board's determination that the respondent's mental disability did not cause the misconduct for purposes of standard 9.32(i)(2) is supported by the record, and we accept it. Moreover, we disagree with the respondent that the board confused the mitigating factor of mental disability in a disciplinary proceeding with the insanity defense in criminal law. The analysis of the majority of the board is consistent with the testimony of the assistant disciplinary counsel's expert witness and with the commentary to standard 9.32(i), which states in part:

Issues of physical and mental disability or chemical dependency offered as mitigating factors in disciplinary proceedings require careful analysis. *Direct causation*

*between the disability or chemical dependency and the offense must be established.* If the offense is proven to be attributable solely to a disability or chemical dependency, it should be given the greatest weight. If it is principally responsible for the offense, it should be given very great weight; and if it is a substantial contributing cause of the offense, it should be given great weight. In all other cases in which the disability or chemical dependency is considered as mitigating, it should be given little weight.

ABA *Standards* 9.32(i) commentary (Supp. 1992) (emphasis added). The board did find the following factors in mitigation: the absence of a prior disciplinary history, *id.* at 9.32(a); the presence of personal and emotional problems, *id.* at 9.32(c); and substantial evidence of the respondent's good character and reputation. In aggravation, the respondent acted out of a dishonest or selfish motive, *id.* at 9.22(b); the period over which the funds were converted and the different ways in which it was accomplished established a pattern of misconduct, *id.* at 9.22(c); and the respondent has substantial experience in the practice of law, *id.* at 9.22(i). The board also found that the utility company victim was vulnerable because it would not have discovered the improper billings without an audit, *id.* at 9.22(h).

The manner and the extent of the respondent's willful and knowing conversion of client property dictate that he be disbarred, even considering the factors in mitigation. *Robbins*, 869 P.2d at 519. The respondent took no steps to remedy the misconduct or to seek treatment until after it was discovered by his law firm. Accordingly, we accept the hearing panel's recommendation.

---

**2.** An "adjustment disorder" is

a maladaptive reaction to an identifiable psychological stressor, or stressors, that occurs within three months after onset of the stressor, and has persisted for no longer than six months. The maladaptive nature of the reaction is indicated either by impairment in occupational (including school) functioning or in usual social activities or relationships with others or by symptoms that are in excess of a normal and expectable reaction to the stressor.

American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 329 (3d ed.-revised 1987) (DSM–III–R). The category of "adjustment disorder with mixed disturbance of emotions and conduct" is "used when the predominant manifestations are both emotional symptoms (e.g., depression, anxiety) and a disturbance of conduct...." DSM–III–R 309.40 at 331.

## III

It is hereby ordered that Michael J. Ogborn be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective immediately upon the issuance of this opinion. It is further ordered that the respondent pay the costs of this proceeding in the amount of $2,735.23 within 90 days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.