The PEOPLE of the State of
Colorado, Complainant,

v.

Thomas Richard LEFLY,
Attorney–Respondent.

No. 94SA406.

Supreme Court of Colorado,
En Banc.

Aug. 28, 1995.

Rehearing Denied Sept. 25, 1995.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Assistant Disciplinary Counsel, Denver, for complainant.

Eugene Deikman, P.C., Eugene Deikman, Denver, for attorney-respondent.

PER CURIAM.

The respondent in this lawyer discipline proceeding, Thomas R. Lefly, converted client trust funds. A hearing board (the board) recommended that he be disbarred, and a hearing panel of the Supreme Court Grievance Committee approved the recommendation as well as the board's findings of fact. The respondent filed exceptions to the panel's action, asserting that disbarment is too severe a sanction. We accept the hearing panel's recommendation.

I

The respondent, who was admitted to the practice of law in Colorado in 1975, and the assistant disciplinary counsel entered into an unconditional stipulation of facts and admission of misconduct. The board conducted a hearing for the primary purpose of determining the appropriate sanction. The respondent, two members of the Church of Scientology, and a psychologist testified at the hearing. Based on the stipulation and the exhibits and testimony adduced at the hearing, the board found the following facts to be established by clear and convincing evidence.

A

On January 4, 1991, the respondent settled a workers' compensation claim on behalf of his client, Doris Mitchell, for $55,000. A warrant for that amount was issued to Mitch-

ell and sent to the respondent. On January 22, 1991, the respondent endorsed the warrant as Mitchell's attorney-in-fact and deposited it into a trust account. Although the respondent withdrew $11,000 in attorney fees from the trust account in January and February of 1991, he did not at that time notify Mitchell that the settlement proceeds had been received.

Mitchell telephoned the respondent once or twice between January and October 1991. The respondent intentionally misled and deceived Mitchell in these telephone conversations by telling her that he had not received the settlement funds. The respondent testified that he believed that Mitchell was an elderly person who was easily misled.

On September 13, 1991, Mitchell informed the Colorado Compensation Insurance Division that she had not received her settlement funds. On September 24, 1991, a representative of that agency telephoned the respondent to discuss the settlement check. Although the respondent then called Mitchell, he did not inform her that he had received her funds eight months earlier.

The respondent was notified on October 25, 1991, that a request for investigation of his representation of Mitchell had been filed against him. On October 30, 1991, the respondent paid Mitchell a sum representing her share of the settlement proceeds plus interest; refunded a retainer she had paid to him; and reduced the amount of attorney fees initially charged because of the delay.

In July 1991, the balance in the trust account into which the respondent had deposited Mitchell's settlement proceeds was $1,343.36, far less than the amount he then owed Mitchell. The respondent used personal funds to pay Mitchell in October 1991.

The board concluded that the respondent's conversion of Mitchell's funds was an intentional act on his part and violated DR 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 6-101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer); DR 9-102(B)(1) (a lawyer shall promptly notify a client of the receipt of the client's funds, securities or other proper-

ties); DR 9-102(B)(3) (a lawyer shall maintain complete records of client property in the possession of the lawyer and render appropriate accounts to the client regarding the property); and DR 9-102(B)(4) (a lawyer shall promptly pay or deliver to the client as requested by the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive). The record supports these determinations.

## B

Between January 1989 and December 1991, the amount of the combined balances in the respondent's three trust accounts was consistently less than the total amount owed to several of his clients. On at least forty-five occasions during this period of time the sum of the combined balances fell below the amount necessary to pay settlements. On at least sixty-eight occasions during the same period of time the respondent withdrew attorney fees from the trust accounts before his law firm had received the funds from which the fees were to be taken. On several occasions during this period of time settlement disbursements were made to clients of the respondent from one trust account although the corresponding settlement proceeds were deposited into another trust account and no connecting transfers were made between the two accounts. On at least thirty occasions during this period of time the respondent's clients did not receive their settlement proceeds in a timely manner; the delays ranged from thirty days to nine months.

In addition, between April 1989 and December 1989 the respondent withdrew a total of $15,785.62 from the trust accounts for business use and payment of day to day law firm expenses. The respondent was not able to account for the origin of this money or his entitlement to it.

The hearing board found that the respondent's misconduct over this extensive period of time included the intentional conversion of client trust funds, contrary to DR 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and also violated DR 6-101(A)(3) (a lawyer shall not neglect a legal matter); DR 9-102(A) (all funds of clients paid to the lawyer shall be

deposited in one or more identifiable interest-bearing depository accounts maintained in the state in which the law office is located); DR 9–102(B)(1) (a lawyer shall promptly notify client of receipt of funds); DR 9–102(B)(3) (a lawyer shall maintain complete records of client funds and render appropriate accounts); and DR 9–102(B)(4) (a lawyer shall promptly pay or deliver client funds). The record supports these determinations.

## C

The respondent has mismanaged his trust accounts constantly since 1982. Recognizing that he was experiencing severe mental and emotional difficulties in 1983, the respondent sought counseling from two psychologists. In 1984, the respondent moved to withdraw from two cases, citing disability as the reason for the withdrawals.

When opposing counsel in one of those cases filed a request for disability investigation with the Supreme Court Grievance Committee, the respondent was evaluated by a psychiatrist in May of 1984. At that time the respondent perceived that he had substantially recovered from his emotional difficulties and did not disclose his trust account deficiencies to the psychiatrist. The respondent continued to see one of his treating psychologists until 1986 or 1987, and at some point in time received prescribed medication.

Although the respondent brought his trust accounts into balance in 1985, he began using funds from those accounts in 1988. The respondent again suffered severe emotional distress in 1988. He obtained counseling, but perceived that the counseling made him worse.

In February of 1990 the respondent joined the Church of Scientology, in part because of a belief that traditional forms of psychotherapy and medication were not helpful to him. Since then he has participated in a structured program provided by the Church, which program includes a form of counseling called "auditing," to address his emotional and economic problems. During the course of these discussions he devised an initial plan to repay his trust accounts, but that plan failed. He later adopted a second plan to eradicate the deficits, which plan included use of proceeds he had received from his father's estate, his own personal funds, and funds obtained from three loans from Church of Scientology members. His trust accounts were brought into balance by December 1991 or shortly thereafter.

In an effort to eliminate the shortages, the respondent obtained a $25,000 loan in June 1991 from a member of the Church of Scientology and deposited that sum into his operating account. On June 10, 1991, he received a settlement check in the amount of $175,000 on behalf of Mr. Aravelo, a client who could not speak English. Although Aravelo was entitled to receive $116,509.17 of the settlement proceeds, the respondent, by exploiting the language barrier, intentionally informed Aravelo that the funds had not been received. On June 27, 1991, the respondent transferred $87,000 from a trust account to his operating account. A large portion of the $87,000 was derived from Aravelo's settlement proceeds.

Pursuant to the directions of a Florida loan agent hired by the respondent, the respondent transferred $65,800 of the $87,000 into a separate account for the purpose of obtaining a lender or lenders to bring the trust accounts into balance. Although the loan agent did not locate a lender, he retained $6,680 of the $65,800 deposit as a commission and refunded the balance of $59,120 to the respondent. On October 21, 1991, the respondent deposited this $59,120 sum into one of his trust accounts. Although he subsequently deposited sums from other sources into this trust account, he never completely repaid the amount withdrawn from Aravelo's settlement proceeds.

Between June 11 and August 22, 1991, the respondent paid Aravelo a total of $120,490.83 with settlement funds of other clients. Those clients did not authorize such use of their settlement funds.

The board concluded that in carrying out these activities the respondent intentionally converted his client's settlement funds to his own use, in violation of DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and also violated DR 6–101(A)(3) (a lawyer shall not neglect a legal matter); DR 9–102(A) (client funds shall be

deposited in one or more identifiable interest-bearing depository accounts); DR 9–102(B)(1) (a lawyer shall promptly notify client of receipt of funds); DR 9–102(B)(3) (a lawyer shall maintain complete records of client funds and render appropriate accounts); and DR 9–102(B)(4) (a lawyer shall promptly pay over client funds). The record supports these determinations.

## II

Two members of the board recommended that the respondent be disbarred. The third member of the board concluded that the respondent should be suspended from the practice of law for a period of three years. The hearing panel approved the recommendation of disbarment.

■ We have previously observed that in the absence of significant factors in mitigation disbarment is virtually automatic when a lawyer knowingly converts client funds. *People v. Young,* 864 P.2d 563, 564 (Colo. 1993) (lawyer disbarred for knowing conversion of clients' funds notwithstanding presence of restitution, lawyer's cooperation, and absence of prior discipline); *see also People v. Guyerson,* 898 P.2d 1062, 1063 (Colo.1995) (lawyer disbarred after converting law firm and client funds notwithstanding presence of substantial personal and emotional problems and absence of prior discipline); *People v. Ogborn,* 887 P.2d 21, 23 (Colo.1994) (conversion of client funds warrants disbarment even in absence of prior discipline and presence of personal and emotional problems); *People v. Robbins,* 869 P.2d 517, 518 (Colo. 1994) (conversion of client trust funds warrants disbarment even if funds are restored before clients learn they are missing but not before the conversion is discovered by the lawyer's law firm); *People v. Robnett,* 859 P.2d 872, 878 (Colo.1993) (attorney disbarred for conversion of client funds and deception of client); *People v. Finesilver,* 826 P.2d 1256, 1258 (Colo.1992) (conversion of trust funds and forging of court document warrants disbarment). Under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ), in the absence of mitigating factors "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." ABA *Standards* 4.11.

In this case the respondent has no previous discipline, which is a factor in mitigation. *Id.* at 9.32(a). The board also found the presence of a number of additional mitigating factors. The respondent made full restitution to Mitchell and to the other clients whose funds he misappropriated and converted, although the restitution to Mitchell was not effectuated until after the request for investigation was filed. *Id.* at 9.32(d). In addition, the respondent cooperated fully in the disciplinary proceedings, *id.* at 9.32(e); was suffering from personal and emotional problems at the time of the conversions, *id.* at 9.32(c); and has demonstrated remorse by initiating an intensive treatment program through the Church of Scientology, *id.* at 9.32(*l* ).

■ In aggravation, the respondent's motives in misappropriating the trust funds and using them for personal and business expenses were dishonest and selfish. *Id.* at 9.22(b). He misappropriated the trust funds on numerous occasions over a period of years, *id.* at 9.22(c), and engaged in multiple offenses, *id.* at 9.22(d). He also intentionally took advantage of Mitchell, who was elderly, and of Aravelo, who did not speak English. *Id.* at 9.22(h). Finally, at the time of the conversions the respondent had substantial experience in the practice of law. *Id.* at 9.22(i).

■ The respondent argues that a three-year suspension is the appropriate sanction because of the presence of certain extraordinary factors in mitigation. *See People v. Lujan,* 890 P.2d 109, 112 (Colo.1995) (lawyer who stole from her law firm was suspended rather than disbarred because of certain extraordinary and tragic factors in mitigation, including the sudden emergence of a mental disorder that caused the misconduct). In particular, the respondent claims that the board erroneously failed to find that his conduct resulted in part from a mental disability, defined as follows by the ABA *Standards:*

(i) mental disability ... [may be considered as a mitigating factor] when:

(1) there is medical evidence that the respondent is affected by a ... mental disability;

(2) the ... mental disability caused the misconduct;

(3) the respondent's recovery from the ... mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

ABA *Standards* 9.32(i) (1992 Supp.). Contrary to the respondent's argument, the record does not establish the existence of this mitigating factor. The record contains uncontradicted evidence that as a child the respondent repeatedly suffered severe physical and psychological trauma and that the respondent's adult life has been characterized by several unhappy and unwise personal relationships. However, the record contains evidence that in 1984 the respondent was the subject of a request for investigation into his competency to practice law as a result of his efforts to withdraw from pending cases. A psychiatrist who at that time examined the respondent pursuant to an order of this court concluded that the respondent was competent to practice law, although the psychiatrist recommended that the respondent should be subject to ongoing peer review.

In our view, the limited medical evidence in the record does not establish that the respondent was affected by a mental disability at the time of his misconduct,[1] ABA *Standards* 9.32(i)(1), or that his misconduct from 1988 through 1991 was caused by a mental disability, *id.* at 9.32(i)(2). Consequently, the medical evidence does not establish that the respondent recovered from a mental disability, *id.* at 9.32(i)(3), or that such recovery arrested his misconduct, *id.* at 9.32(i)(4). The board did not err in failing to find as a mitigating factor that the respondent suffered from a mental disability at the time of his misconduct.

At the hearing the respondent presented testimony from two members of the Church of Scientology, a minister and an auditor. Although the board found those witnesses to be credible and sincere, it in effect concluded that the opinions they expressed with respect to issues of aggravation, mitigation, and the likelihood of future misconduct by the respondent were not sufficiently persuasive to warrant a sanction other than disbarment. We agree with that conclusion. *See Campbell v. State*, 265 Ark. 77, 576 S.W.2d 938, 947–48 (1979) (trial court did not abuse its discretion by holding that a criminal defendant's minister was not qualified as an expert on the question of the defendant's mental disease or defect); *Young v. New York City Transit Auth.*, 143 A.D.2d 656, 533 N.Y.S.2d 18 (1988) (plaintiff's pastor was not a qualified medical expert in the area of psychological injury), *appeal dismissed*, 73 N.Y.S.2d 871, 537 N.Y.S.2d 495, 534 N.E.2d 333 (1989).

■ The respondent's personal and emotional problems during the relevant period of time were certainly severe. *See* ABA *Standards* 9.32(c). Nevertheless, in view of the numerous and grave instances of professional misconduct, including the intentional misappropriation of client funds, we conclude that disbarment is the appropriate sanction. *People v. Guyerson*, 898 P.2d 1062, 1064 (Colo. 1995). Accordingly, we accept the hearing panel's recommendation.

### III

It is hereby ordered that the respondent, Thomas Richard Lefly, be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court effective thirty days after the date of this opinion. It is further ordered that the respondent pay the costs of this proceeding in the amount of $1,045.36 within thirty days of the date of this opinion to the Supreme Court Grievance Committee, 600—17th Street, Suite 920–S, Denver, Colorado 80202–5135.

---

1. At the hearing a psychologist who treated the respondent some ten years prior to the hearing testified with respect to his experience with the respondent at that time. The only other medical evidence consisted of the written report of the psychiatrist who examined this respondent in 1984 pursuant to this court's order.