The PEOPLE of the State of Colorado, Complainant,

v.

Alan R. MARSH, Attorney–Respondent.

No. 95SA144.

Supreme Court of Colorado, En Banc.

Jan. 8, 1996.

Linda Donnelly, Disciplinary Counsel, Kenneth B. Pennywell, Assistant Disciplinary Counsel, Denver, for Complainant.

Alan R. Marsh, Denver, Pro Se.

PER CURIAM.

The respondent in this lawyer discipline proceeding converted client funds and engaged in a pattern of serious neglect of client matters. A hearing board recommended that he be disbarred. A hearing panel of the Supreme Court Grievance Committee approved the board's findings of fact and its recommendation of disbarment. The respondent excepted to the panel's action, asserting that certain mitigating factors render disbarment too severe a sanction. We nevertheless accept the panel's recommendation, and order that the respondent be disbarred.

I.

The respondent was admitted to practice law in Colorado in 1979. Three separate

disciplinary complaints, Nos. GC 94B–12, GC 94B–51, and GC 94B–74, were consolidated for a single hearing before the board. The assistant disciplinary counsel and the respondent entered into an unconditional stipulation of facts and disciplinary violations. Based on the stipulation, exhibits, and the testimony at the hearing, including the respondent's testimony, the board found the following to be established by clear and convincing evidence.

## II.

### GC 94B–12

The respondent filed a complaint on behalf of Olivia K. Johnson on July 5, 1988, asserting that the defendants were in default on a promissory note held by Johnson. The court entered a default judgment against the defendants for $10,699.78 on May 24, 1989, and awarded attorney fees in the amount of $2,674.95 on June 10, 1989.

The respondent filed a writ of continuing garnishment against the wages of one of the defendants, beginning in July 1989, and continuing until April 1993, when the entire judgment plus interest was satisfied. The garnishment procedure required the defendant's employer to mail a check to the clerk of the court who would forward it payable to the respondent and Johnson. Johnson gave the respondent a limited power of attorney so that he could cash the checks and deposit the proceeds in his trust account. The respondent and his client agreed that he was entitled to 25% of each amount obtained by garnishment.

In the summer of 1992, Johnson asked the respondent for an accounting of all amounts received and disbursed by him relating to her case. Johnson was not satisfied with the documents the respondent supplied and requested further information which the respondent did not provide.

In about October 1992, the respondent, who was undergoing financial problems related to the dissolution of his marriage, began to intentionally divert the garnishment funds due to Johnson in order to use them for his own purposes. Between October 1992 and April 1993, it is estimated that the respondent converted over $2,000 of Johnson's funds.

The respondent did not return any of the numerous telephone calls to him from Johnson between November 1992 and February 1993. After the request for investigation in this matter was filed with the Office of Disciplinary Counsel, the respondent paid Johnson $200 on December 30, 1993. He paid Johnson an additional $1,867.44 on July 5, 1994, and the board found no evidence that Johnson was not thereby paid in full.

The respondent stipulated, and the hearing board found, that the foregoing conduct, which occurred before and after the effective date of the Rules of Professional Conduct, January 1, 1993, violated DR 1–102(A)(4) and R.P.C. 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 6–101(A)(3) and R.P.C. 1.3 (a lawyer shall not neglect a legal matter entrusted to the lawyer); and DR 9–102(B)(3) (failure to render appropriate accounts to the client regarding the property).

## III.

### GC 94B–51

#### A.

The respondent represented Paula Jorgensen beginning in mid-1992 in two matters involving Jorgensen's personal injuries. The first matter was an action against the driver of a vehicle involved in an accident with Jorgensen, and the second was against Jorgensen's insurance carrier. Jorgensen moved to California in late 1993.

In the first matter, the respondent failed to communicate in a timely manner with his client regarding her deposition; did not respond to the defendant driver's motion to strike Jorgensen's expert witnesses and did not attend the hearing on the motion; and failed to communicate with opposing counsel regarding the scheduling of a deposition of one of the defendant's medical witnesses. Moreover, the respondent failed to reply to Jorgensen's letters and telephone messages, and did not respond to the letters and messages left by a lawyer Jorgensen hired to contact the respondent. Further, he did not return Jorgensen's files, although requested

to do so, until the very day of the hearing in this disciplinary matter, November 2, 1994.

The above conduct violated R.P.C. 1.3 (neglect of a legal matter), and R.P.C. 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information).

### B.

In the second Jorgensen matter, the respondent filed a complaint against Jorgensen's insurance company, asserting that the insurer handled Jorgensen's claims in bad faith. The case was ordered set for arbitration through the procedures of the Colorado Insurance Commission. The insurer moved to dismiss the action on February 2, 1994, claiming that the respondent had not assisted in selecting the arbitrators. The respondent did not file a response and the district court granted the motion to the extent that Jorgensen proceed to binding arbitration. On February 15, 1994, the Commissioner of Insurance ordered Jorgensen to designate an arbitrator within thirteen days. The respondent did not comply with the order. The respondent's conduct violated R.P.C. 1.3 (neglect of a legal matter).

In addition, because he did not file a response to the request for investigation filed in the Jorgensen matters, the respondent admitted that he violated R.P.C. 8.4(d) (engage in conduct that is prejudicial to the administration of justice), R.P.C. 8.4(h) (engage in conduct that adversely reflects on the lawyer's fitness to practice law), and C.R.C.P. 241.6(7) (failure to respond to a request by the grievance committee without good cause shown, or obstruction of the committee or any part thereof in the performance of its duties constitutes ground for lawyer discipline).

### C.

The respondent shared office space with another lawyer from 1988 to August 1992. When the respondent and the other lawyer separated their offices, the respondent took sixteen of the other lawyer's cases.

In one of these cases, the respondent filed an action in August 1992 against a defendant for the nonpayment of attorney fees. The respondent received $1,800 from the defendant pursuant to a judgment against her and in favor of the lawyer who gave the respondent the case. The respondent did not pay the funds to the lawyer, however, or render an accounting to him. According to the respondent, he kept the $1,800 as a setoff for claims he asserted against the other lawyer. In another case seeking unpaid attorney fees on behalf of the other lawyer, the respondent obtained service on the defendant, but then took no further action.

The respondent also received $725 in partial settlement of a case in which the respondent and the other lawyer represented the plaintiff. Although he remitted two-thirds of that amount to the client, the respondent did not share any of the attorney fees with the other lawyer, or provide him with an accounting.

The respondent failed to keep the other lawyer advised of the status of another case, and did not return the case file to him after being asked to do so. He also failed to finalize a settlement in another case, and did not return the other lawyer's many telephone calls requesting information or files.

As the hearing board concluded, the respondent's conduct violated DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 6–101(A)(3)· and R.P.C. 1.3 (neglect of a legal matter); R.P.C. 1.4(a) (failure to keep a client reasonably informed about the status of a matter); DR 9–102(A)(2) (failure to segregate disputed funds); DR 9–102(B)(3) (failure to render appropriate accounts); DR 9–102(B)(4) (a lawyer shall promptly pay or deliver to the client as requested by the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive); and R.P.C. 1.15(b) (upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third

person, render a full accounting regarding such property).

## IV.

### GC 94B–74

The respondent represented a client in a dissolution of marriage proceeding which became final on April 10, 1992, when a stipulation regarding final orders was made an order of the court. The respondent agreed to obtain the information necessary to prepare the qualified domestic relations order (QDRO) which would accomplish the division of his client's 401K plan. Nevertheless, the respondent never prepared the QDRO as he had promised, despite inquiries from his client's former spouse's lawyer and agent. The respondent's conduct violated DR 6–101(A)(3) and R.P.C. 1.3 (neglect of a legal matter), as well as R.P.C. 1.4(a) (failure to keep a client reasonably informed about the status of a matter). Moreover, the respondent failed to respond to the request for investigation filed in this matter, contrary to C.R.C.P. 241.6(7).

## V.

■ The hearing panel approved the board's recommendation that the respondent be disbarred. "When a lawyer knowingly converts client funds, disbarment is 'virtually automatic,' at least in the absence of significant factors in mitigation." *People v. Young,* 864 P.2d 563, 564 (Colo.1993) (knowing conversion of clients' funds warrants disbarment even absent prior disciplinary history and despite cooperation and making restitution). *See also People v. Guyerson,* 898 P.2d 1062, 1063 (Colo.1995) (lawyer disbarred after converting law firm and client funds, notwithstanding presence of substantial personal and emotional problems and absence of prior discipline); *People v. Ogborn,* 887 P.2d 21, 23 (Colo.1994) (conversion of client funds warrants disbarment even in absence of prior discipline and presence of personal and emotional problems); *People v. Robbins,* 869 P.2d 517, 518 (1994) (conversion of client trust funds warrants disbarment even if funds are restored before clients learn they are missing but not before the conversion is

discovered by the lawyer's law firm); *People v. Robnett,* 859 P.2d 872, 878 (Colo.1993) (attorney disbarred for conversion of client funds and deception of client); *People v. Finesilver,* 826 P.2d 1256, 1258 (Colo.1992) (conversion of trust funds and forging of court document warrants disbarment).

In the absence of mitigating factors, the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*) provides that "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." ABA *Standards* 4.11. The respondent nevertheless maintains that a sanction less than disbarment is warranted in his case.

First, the respondent asserts that certain facts found by the hearing board are not supported by clear and convincing evidence. The board's findings are based almost entirely on the stipulation entered into between the respondent and the assistant disciplinary counsel, and the respondent represents that he is not denying the admissions contained in the stipulation. In any event, the differences between the board's factual findings and the facts proffered by the respondent are not significant enough to change either the respondent's ethical violations or the analysis of discipline.

The hearing board found the following factors in aggravation. The respondent received a letter of admonition in 1992 resulting from the failure to promptly return unearned fees to his client and to deposit client's retainer in a trust account. ABA *Standards* 9.22(a) (prior discipline is an aggravating factor). Additional aggravating factors include the respondent's dishonest and selfish motive, *id.* at 9.22(b); the existence of a pattern of misconduct, *id.* at 9.22(c); multiple offenses, *id.* at 9.22(d); the respondent's intentional failure to comply with the rules of the grievance committee, *id.* at 9.22(e); his substantial experience in the practice of law, *id.* at 9.22(i); and the vulnerability of one of the respondent's victims, *id.* at 9.22(h).

■ The board was particularly concerned with the respondent's refusal to ac-

knowledge the wrongful nature of his conduct, *id.* at 9.22(g). In addition, the board found that

> [a]t no time during the course of the hearing ... did the respondent express an understanding of his fiduciary role and his obligation to safeguard client funds. Instead, the respondent reasoned that his acts were mitigated by his desperate financial situation and his alleged intent, at the time the funds were converted, to eventually repay Ms. Johnson.

*See id.* at 9.22(j) (indifference to making restitution is an aggravating factor). The respondent claims that the board incorrectly disregarded the respondent's protestations of remorse and desire to make restitution. We decline the respondent's invitation to overturn the board's findings, which are amply supported by the record as a whole.

> When they are approved by the hearing panel, the board's factual findings are binding on this court unless, after considering the record as a whole, the findings are unsupported by substantial evidence. *People v. Genchi,* 824 P.2d 815, 817 (Colo. 1992); *People v. Bennett,* 810 P.2d 661, 665 (Colo.1991). When acting as a fact finder, the hearing board has the duty to assess the credibility of evidence before it, controverted and uncontroverted. *People v. Distel,* 759 P.2d 654, 662 (Colo.1988).

*People v. Dieters,* 825 P.2d 478, 481 (Colo. 1992).

In mitigation, the board found the existence of personal or emotional problems. ABA *Standards* 9.32(c). The respondent alleges, however, that the hearing board did not properly consider evidence of additional mitigating factors. For example, he indicates that he made a good faith effort to provide restitution, ABA *Standards* 9.32(d), and that' there was evidence of his good character or reputation, *id.* at 9.32(g).

Since the board's conclusion that the respondent was indifferent to making restitution was supported by the record, the failure to find a good faith effort to provide restitution was not erroneous. Further, the evidence of the respondent's good character was not such as to change the result in this case.

Finally, the respondent asserts that disbarment is not warranted in this case because of the "small amount" converted, the fact that restitution was made (after the grievance proceedings were instituted), and all the other circumstances in the record.

It is true, as the respondent points out, that the amount converted in this case is less than in some other cases. We have never held, however, that the amount converted was dispositive or even significant. The most important factor is the lawyer's mental state and whether the lawyer knowingly converts client property. The hearing board correctly found that the respondent did intend to convert client funds in this case, and the respondent's assertions that he intended to replace the funds at some point is not particularly significant.

■ While in many cases the lawyer did intend to permanently deprive the victim of funds, *see, e.g., Guyerson,* 898 P.2d at 1063, we have not *required* that the lawyer intend to permanently deprive the client of the funds to knowingly convert client funds for lawyer disciplinary purposes, *see People v. Lefly,* 902 P.2d 361, 363–64 (Colo.1995) (lawyer's knowing conversion of client funds almost always merits disbarment even if the funds are eventually replaced). The knowing conversion in this case, together with all of the respondent's other disciplinary violations, requires that he be disbarred, even considering his personal and emotional problems at the time of the misconduct. *Lefly,* 902 P.2d at 365; *Guyerson,* 898 P.2d at 1064.

## VI.

It is hereby ordered that Alan R. Marsh be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective thirty days after the date of this opinion. It is further ordered that Marsh pay the costs of this proceeding in the amount of $2,777.96 within ninety days of the date of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Dominion

Plaza, Denver, Colorado 80202–5435.[1]

---

1. The respondent also alleges that the costs assessed against him are "far too vague and conclusory to afford either the Respondent or the Court a reasonable opportunity to objectively as- sess the costs billed." The respondent has given no reason, however, for us to question the costs certified to the court by the grievance committee counsel.