The PEOPLE of the State of
Colorado, Complainant,

v.

Angela M. LUJAN, Attorney–Respondent.

No. 94SA289.

Supreme Court of Colorado,
En Banc.

Feb. 13, 1995.

Linda Donnelly, Disciplinary Counsel, Kenneth B. Pennywell, Asst. Disciplinary Counsel, Denver, for complainant.

Carl F. Manthei, Boulder, for attorney-respondent.

PER CURIAM.

■ The reason for lawyer discipline proceedings such as these is the protection of the public and not punishment of the offending lawyer. The respondent[1] is a lawyer who stole from her law firm, but who nevertheless does not deserve to be disbarred because of certain extraordinary and tragic factors in mitigation, including the sudden emergence of a mental disorder that caused the misconduct. A hearing panel of the Supreme Court Grievance Committee approved the findings and recommendation of a hearing board that the respondent be suspended for one year from the date of the hearing. We accept the hearing panel's recommendation that the respondent be suspended for one year, but the effective date of the sus-

pension is the date of this opinion, rather than the date of the hearing.

## I.

The parties entered into an unconditional stipulation of facts. Based on the stipulation, and testimony relating primarily to the proper level of discipline, the hearing board made the following findings and conclusions.

The respondent began working with her law firm in August 1988, became a shareholder in December 1989, and continued as a shareholder until February 1992. Shortly after being hired by the law firm, the respondent traveled to Egypt to meet her husband, who was working there. While traveling through Egypt by automobile, she was involved in a serious head-on collision in which several people were killed. When she regained consciousness, she was in a primitive medical facility in rural Egypt. She suffered a closed head injury, and had no memory of the accident itself. Her husband took her to Cairo and later to the United States where she required surgery to repair the damage inflicted by the accident. Some months later, after seeing a major vehicle accident, the respondent remembered that she had been sexually assaulted while lying on the side of the road after the accident in Egypt.

The respondent was issued a credit card on the firm's account for business expenditures. She was expected to reimburse the firm for any personal expenses she charged to the account. The respondent charged approximately $22,000 in personal expenses to the law firm's credit card, but portions of those expenses were not reimbursed for extensive periods of time. In mid–1991, the respondent owed about $8,000 for personal expenses billed to the firm's credit card.

In June 1991, the respondent charged four days of hotel accommodations to a client's account by means of the credit card. The amount was later deleted by the respondent and the client was not assessed the charges, which were not business related. About a week later, the respondent asked the law

---

**1.** The respondent was admitted to the bar of this court on May 25, 1983, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee in these proceedings. C.R.C.P. 241.1(b). In April 1993, the respondent was placed on disability inactive status, C.R.C.P. 241.19, and she has not been reinstated.

firm to issue a check for $650.00. She indicated that $350 was for an expert witness fee in a case and that the remainder was to purchase lamps for the firm. The respondent did purchase the lamps, but misappropriated $350 for her personal use. There was no expert witness fee to be paid. The respondent, however, submitted a fabricated letter to the expert to the firm's bookkeeper, along with a receipt purportedly signed by the expert. The respondent wrote the receipt herself and forged the expert's signature. The $350 was billed to a client on the respondent's instructions, and was paid by the client despite the respondent's attempt to delete the charge from the client's account.

Another shareholder in the law firm confronted the respondent in July 1992 concerning her excessive use of the credit card for personal expenses, and her misrepresentations that certain personal expenses were related to business. The respondent surrendered her credit card and expressed remorse. She implied to the other shareholder that she was in therapy to address an addiction to shopping although she was not in therapy at that time.

The respondent nevertheless continued to submit falsified charges to the law firm after the meeting. The parties have stipulated that the total amount fraudulently charged to the law firm as related to business included mileage charges of $1,166.64; meal charges of $1,069.76; $78.00 for medical records; hotel bills for $216.77; the $350.00 expert witness fee; and gifts for clients in the amount of $104.07. The respondent intended to delete the false charges from the bills before they were forwarded to the clients, but because of the large number of bills she reviewed on a monthly basis, some of the fraudulent charges were inadvertently included in the clients' bills.

The respondent's law firm reimbursed her for expenses related to lodging for an organization of which the respondent served as director. The law firm also provided postage for the organization. The respondent also received reimbursement from the organization, however, for both of these expenses. The respondent repaid her organization for the postage expenses.

The law firm discharged the respondent in the beginning of 1992. The amounts she charged to the law firm on the credit card, the amounts inadvertently billed to clients, and the amounts falsely billed to the firm were repaid at the time the respondent left, or shortly afterwards.

After being fired, the respondent resumed counseling sessions with a psychologist. The respondent sought reimbursement from her health insurance for several sessions that were actually canceled in the fall of 1992. The insurer discovered the false billing before the respondent was paid.

The respondent used the law firm's credit card and the money obtained from the fraudulent billings to purchase clothes. She estimated that she spent about two to three thousand dollars a month for clothes. She began to shop excessively in early 1989, a few months after returning from Egypt. Her husband denied her access to their personal credit cards and joint checking account after becoming alarmed by her shopping.

In February 1993, the respondent conceded that she should be transferred to disability inactive status as she was unable to perform her professional responsibilities competently due to a mental disability. C.R.C.P. 241.19(a). She was transferred to disability inactive status in April 1993, and ordered to undergo an evaluation by a psychologist other than the psychologist she had been seeing. The second psychologist concluded that the respondent was suffering from major depression and from an obsessive compulsive disorder, and recommended that the respondent be seen by a psychiatrist who could prescribe appropriate medication. The respondent then sought the assistance of a psychiatrist, who placed her on a medication known for the successful treatment of both depression and obsessive compulsive disorder. She responded immediately to the medication, her depression lifted, and the compulsive behavior, shopping, was controlled by the initial dosage. Her obsessive thoughts persisted until the dosage was increased to its present level in December 1993.

The respondent admitted to the misconduct outlined above, and the board found that

the respondent thereby violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).

## II.

The hearing board recommended that the respondent be suspended for one year, and that the effective date of the suspension should be the date of the hearing, April 7, 1994. The hearing panel approved the board's recommendation. The assistant disciplinary counsel filed an exception to the panel's action, contending that a one year suspension is too lenient, and that a three-year suspension would be more appropriate. The respondent also excepted to the recommendation, on the basis that the period of suspension should be less than one year.

■ Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ), in the absence of mitigating factors, disbarment is appropriate when "a lawyer engages in . . . intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." ABA *Standards* 5.11(b). Disbarment is essentially automatic when a lawyer converts funds or property and there are no significant factors in mitigation. *People v. Ogborn*, 887 P.2d 21, 23 (Colo.1994). The assistant disciplinary counsel does not think that disbarment is warranted in this case, however, given the mitigating factors, and we agree.

The hearing board found that the respondent's mental disability was the primary consideration in their analysis of discipline. A mental disability is a mitigating factor under the circumstances contained in ABA *Standards* 9.32(i), which provides:

(i) mental disability . . . [may be considered as a mitigating factor] when:

(1) there is medical evidence that the respondent is affected by a . . . mental disability;

(2) the . . . mental disability caused the misconduct;

(3) the respondent's recovery from the . . . mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

ABA *Standards* 9.32(i) (Supp.1992). The board concluded that the expert evidence, both from the respondent's treating psychiatrist and from the psychologist selected by this court to examine her, was clear that the respondent's mental disability was a mitigating factor under standard 9.32(i). The board found that the respondent's obsessive compulsive disorder caused the misconduct by manifesting itself as an overwhelming compulsion to shop following her experiences in Egypt. The board thought it significant that the type of disorder that the respondent suffers from "is a lifetime affliction of biological origin which cannot be controlled without medication." The misconduct was arrested once the respondent's disorder was properly diagnosed and treated with the correct medication.

The board determined that the mitigating factor should be afforded its maximum importance because "[i]f the offense is proven to be attributable solely to a disability or chemical dependency, it should be given the greatest weight." ABA *Standards* 9.32(i) commentary (Supp.1992).

The board also found the following factors in mitigation: the absence of a prior disciplinary history, *id.* at 9.32(a); the presence of personal and emotional problems, *id.* at 9.32(c); a timely good faith effort to make restitution or to rectify the consequences of her misconduct, *id.* at 9.32(d); full and free disclosure to the disciplinary board and cooperative attitude toward the proceedings, *id.* at 9.32(e); evidence of the respondent's good character and reputation, *id.* at 9.32(g); interim rehabilitation, *id.* at 9.32(j); and remorse, *id.* at 9.32(*l* ). In aggravation, the respondent acted out of a dishonest or selfish motive, *id.* at 9.22(b); there was a pattern of misconduct, *id.* at 9.22(c); multiple offenses, *id.* at 9.22(d); and the respondent has substantial experience in the practice of law, *id.* at 9.22(i).

In recommending suspension for one year from the date of the hearing, the board balanced the factors in mitigation against the seriousness of the misconduct and the need for the passage of time in order to determine whether the respondent's medication will in the long run prevent a recurrence of the misconduct. *See id.* at 9.32(i)(4).

In *People v. Abelman,* 804 P.2d 859 (Colo. 1991), we discussed the factors to be considered in determining the appropriateness of retroactive discipline: "[W]hether the conduct is part of a continuing pattern or whether there is only a single instance of misconduct; whether there is a significantly attenuated relationship between the misconduct and the practice of law; and whether the passage of time mitigates the severity of the discipline required." *Id.* at 862. The pattern of misconduct in this case and its direct relationship to the practice of law make retroactive discipline inappropriate. The direct connection between the misconduct and the practice of law also makes a short period of suspension too lenient. *Cf. People v. Eastepp,* 884 P.2d 305 (Colo.1994) (three-month suspension warranted where lawyer engaged in dishonest and illegal conduct, but there were significant and unique mitigating factors and the misconduct did not directly arise from practice of law).

Accordingly, while we accept the panel's recommendation that the respondent be suspended for one year, the suspension is to be effective as of the date of this opinion. The assistant disciplinary counsel is concerned that a suspension of only one year will not be long enough to demonstrate successful rehabilitation. Because the respondent is currently on disability inactive status, she must seek reinstatement under C.R.C.P. 241.23. *See People v. Moya,* 793 P.2d 1154, 1159 (Colo.1990) (proceedings under C.R.C.P. 241.23 for reinstatement from disability inactive status necessary for protection of public). In order to ensure that recurrence of the misconduct is unlikely and that the respondent is once again competent to resume the practice of law, we direct that the respondent not petition for reinstatement from disability inactive status for at least ten months following the date of this opinion.

## III.

It is hereby ordered that Angela M. Lujan be suspended from the practice of law for one year, effective immediately upon the issuance of this opinion. *See* C.R.C.P. 241.21(a). It is also ordered that the respondent may not petition for reinstatement from disability inactive status for ten months after the issuance of this opinion. C.R.C.P. 241.23(a). It is also ordered that the respondent pay the costs of this proceeding in the amount of $938.53 within sixty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.