The PEOPLE of the State of Colorado, Complainant,

v.

Giorgio Deshaun RA'SHADD, Respondent.

No. 04PDJ023.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

March 10, 2005.

Attorney Regulation. Upon conclusion of a sanctions hearing, the Hearing Board disbarred Respondent Giorgio D. Ra'shadd (Registration No. 30417) from the practice of law, effective April 10, 2005. It was established by summary judgment that Respondent converted client funds from a probate estate, failed to pay court-ordered child support while misrepresenting his child support obligation to the Colorado Supreme Court, and placed an advertisement for his services containing false information. Thus, Respondent violated Colo. RPC 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation), 3.4(c) (knowing failure to obey an obligation under the rules of a tribunal), and 7.1(a) (making a false or misleading communication about the lawyer or the lawyer's services). While Respondent has no prior discipline and testified about his medical issues, the Hearing Board found that the dishonest and selfish nature of his conduct, combined with a refusal acknowledge that it was wrongful, warranted the presumptive sanction of disbarment. Respondent was also ordered to pay the costs incurred in conjunction with this proceeding.

On September 14, 2004, JOHN E. HAYES and TERRY F. ROGERS, both members of the bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge, conducted a hearing pursuant to C.R.C.P. 251.18(d) solely on the issue of appropriate sanctions. Nancy L. Cohen, Assistant Regulation Counsel, appeared on behalf of the Office of Attorney Regulation ("the People"). Giorgio Deshaun Ra'shadd ("Respondent") appeared pro se.

## OPINION AND ORDER IMPOSING SANCTIONS

*SANCTION IMPOSED: ATTORNEY DIS-BARRED*

### I. ISSUE

Respondent converted client funds and disobeyed a court order to return the funds, misrepresented his child support obli-

gations to the Colorado Supreme Court, and placed an advertisement for his services containing false information. Absent extraordinary circumstances, disbarment is the presumptive sanction for an attorney who knowingly converts client money or intentionally deceives the court for personal benefit and thereby causes serious injury. Is the lack of prior discipline and Respondent's testimony that he suffers from seizures sufficient evidence in mitigation to overcome the presumption of disbarment?

Despite Respondent's evidence in mitigation, the Hearing Board concludes that disbarment is appropriate in this case.

## II. PROCEDURAL HISTORY AND BACKGROUND

On March 24, 2004, the People filed a Complaint against Respondent. On April 26, 2004, Respondent filed an Answer to the Complaint. On August 10, 2004, the People filed a Motion for Summary Judgment. On August 20, 2004, Respondent filed a response to the Motion for Summary Judgment. On August 31, 2004, the Court granted the People's Motion for Summary Judgment as to Claims II, III, and V of the Complaint. The People then moved to dismiss the remaining claims, Claims I and IV, and the Court granted this motion.

Based upon the summary judgment in favor of the People, the record establishes that there is no dispute as to the facts contained in Claims II, III, and V. Thus, the rule violations with respect to those claims are established. These claims relate, respectively, to violations of: Colo. RPC 8.4(c) (conduct involving dishonesty, fraud, deceit, and misrepresentation); Colo. RPC 3.4 (failure to obey an obligation under the rules of a tribunal); and Colo. RPC 7.1 (a lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services). Accordingly, the only issue for the Hearing Board to decide is the appropriate sanction for these rule violations and the facts that support them.

Kristal Bernert, an attorney who presently represents Felecia Pleas, the personal representative of the Wickliffe Estate, testified on behalf of the People. Mr. Pinkney, a non-lawyer colleague of Respondent's, testified on behalf of Respondent. Respondent also testified on his own behalf. In addition to testimony, the Hearing Board considered the pleadings, the Motion for Summary Judgment and the attached exhibits, the trial briefs, the Parties' arguments, and the credibility of witnesses.

## III. UNDISPUTED FACTS

Based upon the summary judgment entered on August 31, 2004, the following facts, establishing the rule violations outlined above, are undisputed:

Respondent has taken and subscribed the oath of admission, was admitted to the bar of this Court on February 4, 1999, and is registered upon the official records of this Court (registration no. 30417). He is therefore subject to the jurisdiction of this Court in these disciplinary proceedings. The Respondent's registered business address is 8505 East Alameda Ave., Suite 3234, Denver, Colorado 80230–6069.

### Conversion of Funds from the Wickliffe Estate

Felecia Pleas is the personal representative of the estate of her late mother, Annie Wickliff ("the Wickliffe Estate" or "the Estate"). Ms. Pleas hired Respondent in January 2003 to probate the Estate. During that same month, Ms. Pleas delivered a total of $32,734.75 to Respondent—$23,816.73 from the credit union that held Wickliffe Estate assets, and $8,919.00 in other Wickliffe assets. Respondent then deposited these funds, respectively, into two accounts:

- US Bank account no. 103658587680 ("Estate Account")
- US Bank account no. 103658096393 ("*COLTAF* Account").

On February 3, 2003, Ms. Pleas paid Respondent an "attorney retainer" fee of $750.00. This was the only money Ms. Pleas agreed to provide Respondent. Nevertheless, Respondent thereafter withdrew money from both the Estate and *COLTAF* Accounts without Ms. Pleas' permission, beginning in January 2003 and continuing to March of

2003. During this time, Respondent failed to advise Ms. Pleas about the withdrawals he made and failed to keep records accounting for them. At some point, Respondent also managed to deposit $2,777.95 in personal funds belonging to Ms. Pleas (unrelated to the Estate) into the Estate Account. He did so by presenting a check, from Resources Trust and payable to Ms. Pleas, to U.S. Bank.

In March of 2003, Ms. Pleas terminated Respondent's services and demanded the return of her file and all funds from both accounts. She then hired new counsel, Kristal Bernert, to represent her as the personal representative of the Wickliffe Estate. Respondent did not return the file or the funds belonging to the Estate and Ms. Pleas individually.

When Respondent refused to return Ms. Pleas' file and the funds, Ms. Bernert asked Respondent to account for the funds he had withdrawn from the *Estate* and *COLTAF* accounts. Respondent, however, did not provide Ms. Pleas with an accounting as requested. After Ms. Bernert's request for an accounting, Respondent opened a new account with Key Bank. Without Ms. Pleas' permission, he transferred all the Wickliffe funds in the *COLTAF* Account into the new account. In addition, Respondent refused to answer Ms. Pleas' letters and telephone calls. Finally, Ms. Pleas filed a motion in the probate court, asking the court to order Respondent to return both the money and her client file.

On June 10, 2003, the probate court ordered Respondent to return Ms. Pleas' file and all of the Wickliffe property, plus interest, by the close of business that day. Despite the probate court's order, Respondent failed to return *all* of the money or account for funds he withdrew from the *Estate* and *COLTAF* accounts. Instead, Respondent only returned .$18,363.37, an amount that represents the funds Respondent transferred from U.S. Bank to Key Bank without Ms. Pleas' permission.

In January 2003, Ms. Pleas delivered to Respondent a total of $32,734.73 in Wickliffe assets. As a result of Respondent's failure to either return the funds he controlled or to account for them, the probate court held him

in contempt. To date, Respondent has yet to return or account to Ms. Pleas for $4,050.35 from the *COLTAF* Account and $3,379.00 from the Estate Account, despite the probate court's order to do so.

In addition, the probate court set a hearing on June 10, 2003, for the purpose of accounting for the missing funds. Respondent appeared at that hearing and asked for a continuance, claiming that he had to appear in court in Bent County to represent another client as guardian *ad litem*. A clerk for the probate court made phone calls to Bent County to confirm Respondent's claim, but learned instead that no such hearing had been scheduled.

■ Respondent's conversion of the Wickliffe Estate funds and funds belonging to Ms. Pleas, as well as his false statements to the tribunal constitute a violation Colo. RPC 8.4(c) because he engaged in dishonest and fraudulent conduct. Furthermore, Respondent's failure to repay the remainder of the Wickliffe funds to Ms. Pleas as ordered by the probate court constitutes a violation of Colo. RPC 3.4(c) because he knowingly disobeyed an obligation under the rules of the tribunal.

### Failure to Pay Court–Ordered Child Support

■ Since March of 1992, Respondent has been in arrears on child support owed to his first wife, Deborah Williams. He was ordered to pay this obligation through the District Court of Shawnee County, Kansas. Because Respondent has never amended the original divorce decree, he continues to owe Ms. Williams $353.00 per month for support of their two minor children. Although Respondent has made a few sporadic payments, as of January 15, 2004 he owes $28,076.69 in child support payments.

In spite of the Kansas support order, Respondent falsely stated on his year 2000 attorney registration form, submitted to the Colorado Supreme Court, that he was "not under a current order to pay child support." However, in the years 2001 to 2003, Respondent falsely certified on his Colorado attorney registration statements that he was "in

compliance" with outstanding child support orders. Thus, Respondent misrepresented his legal obligation to pay child support in 2000, and later misrepresented the status of his child support obligation in 2001, 2002, and 2003.

Respondent had an obligation, based upon the divorce decree entered in Kansas, to pay child support to Ms. Williams. Therefore, Respondent's failure to pay child support to Ms. Williams constitutes a violation of Colo. RPC 3.4(c) because he knowingly disobeyed an obligation under the rules of a Kansas tribunal. In addition, Respondent's misrepresentations to the Colorado Supreme Court regarding his child support obligations constitute a violation of Colo. RPC 8.4(c) because he was dishonest and deceitful in dealing with a court.

## Falsely Advertising Services to Potential Clients

■ From January 17, 2003 until March 11, 2003, Denise Gray, a first-year law student at the University of Denver Law School, worked for Respondent as a law clerk at his firm, Rocky Mountain Poverty Law Center, LLC. Although they had an agreement that Ms. Gray would be paid for her work, Respondent, never paid her. On May 8, 2003, after Ms. Gray had departed from Respondent's firm, Respondent placed an ad in the Aurora Sun Sentinel under the caption "Legal Services" and listed Ms. Gray as a "special advocate" of his firm. Ms. Gray, however, never trained or served as a special advocate while working for Respondent. Further, Ms. Gray had no knowledge of Respondent's use of her name in the advertisement. Accordingly, Respondent's act of placing an advertisement that contained false and misleading information about his law firm's services constitutes a violation of Colo. RPC 7.1.

## IV. *IMPOSITION OF SANCTIONS*

■ The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct. *In re Roose*, 69 P.3d 43,

46–47 (Colo.2003). In determining the appropriate sanction, ABA *Standard* 3.0 directs the Hearing Board to examine the following factors:

(1) the duty breached;

(2) the mental state of the lawyer;

(3) the injury or potential injury caused; and

(4) the aggravating and mitigating evidence.

The Hearing Board will first consider the presumptive sanctions relevant to Respondent's conduct. As discussed below, the presumptive sanctions point toward disbarment. The Hearing Board must then decide whether the factors listed in ABA *Standard* 3.0, including the evidence presented in mitigation, warrant departure from the presumed sanction of disbarment.

### A. Presumptive Sanctions

#### 1. Presumptive sanction for conversion

■ The act of knowing misappropriation "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking." *People v. Varallo*, 913 P.2d 1, 11 (Colo.1996) (quoting *In re Noonan*, 102 N.J. 157, 506 A.2d 722, 723 (1986)). Neither the lawyer's motive in taking the money, nor the lawyer's intent regarding whether the deprivation is temporary or permanent, are relevant for disciplinary purposes. *Id.* at 10–11. Respondent took funds belonging to both the Wickliffe Estate and Ms. Pleas. He has failed to account for them and has failed to return them, despite repeated requests and a court order. This constitutes conversion.

The presumptive sanction for knowing conversion of client property entrusted to an attorney is disbarment. ABA *Standard* 4.11 states: "Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." Suspension is normally reserved for misconduct, such as commingling funds, that does not amount to misappropriation or conversion of funds for the attorney's own use. ABA *Standard* 4.12 (commentary).

Likewise, the Colorado Supreme Court has indicated that lawyers are "almost invariably disbarred" for knowing misappropriation of client funds. *Varallo,* 913 P.2d at 11; *People v. McGrath,* 780 P.2d 492, 493 (Colo.1989) ("the Court would not hesitate to enter an order of disbarment if there was no doubt that the attorney engaged in a knowing conversion of his client's funds"); *In re Thompson,* 991 P.2d 820, 823 (Colo.1999); *People v. Lavenhar,* 934 P.2d 1355 (Colo.1997); *People v. Lefly,* 902 P.2d 361 (Colo.1995); *People v. Young,* 864 P.2d 563 (Colo.1993) (conversion of clients' funds warrants disbarment even absent prior disciplinary history and despite cooperation and making restitution).

## 2. Presumptive sanction for disobeying a court order

Respondent twice disobeyed a court order. First, he failed to either return or account for converted funds in accordance with the probate court order. Second, Respondent knowingly failed to pay child support to his first wife, required pursuant to a divorce decree. "Disbarment is generally appropriate when a lawyer knowingly violates a court order ... with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party, or causes serious or potentially serious interference with a legal proceeding." ABA *Standard* 6.21.

## 3. Presumptive sanction for dishonest conduct and lack of candor with the court

Respondent made, certified, and submitted false statements to the Colorado Supreme Court. Not only did Respondent have knowledge that his statements were false, he also intended to deceive the Court about the status of his child support obligation. "Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding." ABA *Standard* 6.11. On the other hand, suspension is the

appropriate discipline if a lawyer "knows" his statement to the court is false but does not act with the "intent to deceive the court." ABA *Standard* 6.12; *See In re Cardwell,* 50 P.3d 897 (Colo.2002) (three year suspension appropriate where lawyer failed to advise the court of his client's prior DUI conviction after client advised the court that it was his first conviction). Thus, with respect to Respondent's conduct, the presumed sanction is disbarment.

## 4. Presumptive sanction for misleading communications regarding services

By falsely advertising Ms. Gray's services for his firm, Respondent knowingly misrepresented his services to the community at large. Reprimand is generally appropriate when a lawyer knowingly engages in non-criminal conduct "that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law." ABA *Standard* 5.13. As a result, a reprimand is the minimum sanction that Respondent should receive for this action.

Although the above sanctions are presumed for Respondent's conduct, the Hearing Board considered the following factors before arriving at the appropriate sanction.

## B. Factors Under ABA *Standard* 3.0

The Hearing Board finds that the following evidence, relevant to determining the appropriate sanction, has been proved by clear and convincing evidence:

## 1. Duties breached

Respondent had a duty to his client, Ms. Pleas, to deal professionally, honestly, and openly with the Wickliffe Estate, of which his client was the personal representative. Respondent also had a duty to his client to deal professionally, honestly, and openly with her own personal funds. As an officer of the court, Respondent had a duty to render an honest and accurate accounting on the funds entrusted to him. In addition, he had a duty to promote confidence, not distrust, in our system of justice. Respondent blatantly breached each of these duties.

### 2. Mental state of the lawyer

Respondent acted knowingly when he took Wickliffe Estate funds and Ms. Pleas' money from his *COLTAF* and Estate Accounts. Although Respondent claimed that Ms. Pleas authorized the withdrawals or stole money from the accounts, this claim makes little sense in the absence of any supporting evidence. In addition, Respondent testified that he had a closed head injury during Operation Desert Storm, but he again offered no evidence that such an injury was related to his misconduct. *See People v. Lujan*, 890 P.2d 109, 112–113 (Colo.1995) (disbarment is not the appropriate sanction where an injury *causes* a respondent to engage in the misconduct).

### 3. Injury or potential injury caused

Respondent converted at least $4,050.35 from the *COLTAF* Account and $3,379.00 from the Estate Account. In addition, Respondent's first wife and two minor children have lost the benefit of $28,076.69 because Respondent has disregarded his child support order. These facts alone demonstrate serious injury. Respondent also caused injury to our system of justice, by obstructing the effective administration of the Wickliffe Estate and failing to honor of court orders.

### 4. Aggravating and mitigating evidence

#### a. Mitigating Factors, ABA *Standard* 9.3

##### 1. No Prior Discipline

Respondent has no prior discipline. He has been licensed to practice law in Colorado for six years. Both Respondent and Mr. Pinkney testified that, over the course of his career, Respondent has donated much of his time to *pro bono* clients in Bent County, as well as other locations in the Arkansas Valley and Denver. Respondent testified that he also donated the fees earned in the Wickliffe Estate case to charity.

##### 2. Personal or Emotional Problems

Neither Party presented evidence from an expert on this point, nor did Respondent raise this issue. Respondent, however, appeared to have difficulty remembering dates and events. In addition, he acted in a detached manner at times during the hearing. Further, Respondent testified that he suffered a closed head injury during Operation Desert Storm. There is no evidence, however, to show that any injury caused his misconduct or affected his ability to represent himself in these proceedings.

#### b. Aggravating Factors, ABA *Standard* 9.2

##### 1. Dishonest or Selfish Motive

Although Respondent has been given ample opportunity to explain what he did with the unreturned funds, Respondent cannot or will not provide any explanation, even after spending a night in jail for contempt of court. As a result, the Hearing Board concludes that Respondent converted this money for his own use and benefit, and as such, he had a selfish motive for the misappropriation. He also acted with a dishonest and selfish motive when he provided the Supreme Court with false certifications on his attorney registration reports, where in one instance he failed to disclose his child support obligations altogether, and in other instances he stated that his child support obligations were current.

##### 2. Multiple Offenses

As outlined in the Complaint, Respondent's actions were not limited to a single act of misappropriation. Rather, Respondent misappropriated money from Ms. Pleas' trust accounts, which held the assets of her mother's estate, multiple times from January through March 2003. Respondent not only converted estate funds, but also deposited a check that he knew belonged to Ms. Pleas, although the record is silent on how he managed to do so. Respondent's actions collectively demonstrate that he engaged in multiple acts of conversion.

##### 3. Refusal to Acknowledge Wrongful Conduct

During the sanctions hearing, Respondent stated that he was prepared to accept whatever sanction the Hearing Board thought

was appropriate. Nevertheless, and despite an inability to prove his assertions, Respondent blamed others for his present situation. For example, he blamed Ms. Pleas for the missing funds; the OARC for failing to investigate records supporting his assertion that he had a hearing in Bent County; and the Kansas courts for allegedly informing him that he no longer needed to send child support checks to Kansas in the future.

### 4. Vulnerability of Victim(s)

Respondent took advantage of Ms. Pleas, a woman who was suffering emotional distress from the loss of her mother. Ms. Pleas completely relied on Respondent to give her professional advice and to honestly administer her mother's estate.

### 5. Indifference to Making Restitution

Respondent has never acknowledged that he converted funds. As a consequence, he has never offered to make restitution to Ms. Pleas or the Wickliffe estate.

### IV. CONCLUSION

Upon consideration of the mitigating and aggravating factors, as well as the duties breached, the injuries caused, and Respondent's mental state, the Hearing Board finds that the gravity of Respondent's conduct substantially outweighs any justification for a sanction short of disbarment.

To his credit, Respondent has no prior discipline, but this mitigating factor in isolation cannot ameliorate the degree of damage Respondent knowingly caused to his client, to the legal profession, and to our system of justice. See e.g. Varallo, 913 P.2d at 12 (good reputation in the local legal community and absence of prior discipline insufficient mitigation to warrant sanction less than disbarment).

Respondent also claims that a closed head injury he suffered in Operation Desert Storm is currently causing him to suffer from grand and petit mal seizures. He agrees that, with this condition, he should not be practicing law. The record here, however, is far short of that in the Lujan case where an expert

testified that the mental defect actually caused the misconduct. 890 P.2d 109. To the contrary, the evidence here is that Respondent's actions, in accessing funds that did not belong to him and avoiding an order to pay child support, were knowing and in furtherance of his efforts to satisfy his own needs. Nevertheless, in an abundance of caution, the PDJ ordered an independent medical exam of Respondent at the close of testimony. The doctor has provided that report to the Court, and the doctor's findings do not alter the conclusions reached in this Opinion.

Respondent has not recognized the seriousness of his conduct, and refuses to take responsibility for his actions. He offers unsupported statements about his innocence, but cannot or will not acknowledge that the facts do show his culpability.

Finally, the Court advised Respondent well in advance of the hearing on sanctions that the Court was prepared to appoint an experienced and respected lawyer to represent Respondent pro bono in these proceedings. Respondent simply needed to call this lawyer. Respondent, however, did not do so. When the Court inquired why Respondent did not contact the attorney, Respondent replied that he was busy defending a client in a criminal matter and did not have the time.

One of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them. Respondent intentionally harmed and deceived his client, the probate court, and the Colorado Supreme Court. On these facts, any sanction short of disbarment would be a disservice to our stated goal of protecting the public. The Hearing Board therefore finds that disbarment is the appropriate sanction.

### V. ORDER

It is therefore ORDERED:

1. GIORGIO DESHAUN RA'SHADD, attorney registration no. 30417, is DISBARRED from the practice of law, effective thirty-one (31) days from the date of this Order, and his name shall be stricken from

the roll of attorneys licensed to practice law in the State of Colorado.

2. GIORGIO DESHAUN RA'SHADD is ORDERED to pay the costs of this proceeding; the People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall have ten (10) days in which to respond.

3. GIORGIO DESHAUN RA'SHADD is ORDERED to pay $7,429.35 to the Estate of Annie Wickliffe.