**The PEOPLE of the State of Colorado**

v.

**Susan COCHRANE.**

**No. 12PDJ064.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Jan. 18, 2013.

On December 18, 2012, the Presiding Disciplinary Judge ("the Court") held a sanctions hearing pursuant to C.R.C.P. 251.15(b). Timothy J. O'Neill appeared on behalf of the Office of Attorney Regulation Counsel ("the People"), and Susan Cochrane ("Respondent") appeared pro se. The Court now issues the following "Opinion and Decision Imposing Sanctions Pursuant to C.R.C.P. 251.19(c)."

## OPINION AND DECISION IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

### I. SUMMARY

The People filed a complaint alleging that Respondent violated numerous Rules of Professional Conduct by failing to represent clients diligently, neglecting to safeguard client funds, and converting client funds, among other misconduct. When Respondent did not answer the complaint or otherwise defend, the Court entered default, thereby deeming the alleged misconduct admitted. Respondent appeared at the sanctions hearing, however, and provided evidence of substantial mitigating factors. Balancing the seriousness of her misconduct against the mitigation, the Court concludes the appropriate sanction is suspension of Respondent's law license for three years.

### II. PROCEDURAL HISTORY

The People filed their complaint in this matter on August 21, 2012. Respondent failed to answer the complaint, and the Court granted the People's motion for default on November 26, 2012. Upon the entry of default, the Court deems all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[1]

At the sanctions hearing on December 18, 2012, Respondent moved for a continuance and to set aside the default. She said she had neglected to participate in the disciplinary process because during that same period

---

1. *See People v. Richards,* 748 P.2d 341, 346 (Colo. 1987); C.R.C.P. 251.15(b).

she was laid off from her job, her house was foreclosed upon, she was unable to afford her anti-depressant medication, her father broke his pelvis, and, most important, her fifteen-year-old goddaughter was ill and not expected to live long. Respondent claimed she did not intentionally fail to respond to the People's motion for default, though she acknowledged she was aware of the motion.

The People opposed Respondent's motions. They noted that during a phone call on October 25, 2012, Respondent asked for additional time to answer the motion for default and the People agreed not to oppose a late response. According to the People, Respondent did not mention her goddaughter's illness or her own depression during that call. The People argued that it would be inappropriate to grant Respondent's untimely motions because her failure to cooperate with the disciplinary process mirrors the pattern of neglect underlying the disciplinary charges. The Court agreed with the People and denied both motions.

At the sanctions hearing, neither party called witnesses. The People did not offer any evidence, but Respondent introduced exhibits 1–14.[2]

Also on the day of the sanctions hearing, the Colorado Supreme Court administratively suspended Respondent from the practice of law pursuant to C.R.C.P. 251.8.6.[3]

## III. ESTABLISHED FACTS AND RULE VIOLATIONS

The Court hereby adopts and incorporates by reference the factual background of this case, as fully detailed in the admitted complaint.[4] Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on October 15, 2001, under attorney registration number

33077.[5] She is thus subject to this Court's jurisdiction in these disciplinary proceedings.[6]

### Reeves Matter

■ Greg Reeves, doing business as R & G Construction Company, performed work on a construction project in Fremont County. After contributing about $62,000.00 in labor and materials to the project, he recorded a mechanic's lien with an attorney's assistance. R & G also became a cross-claimant in litigation related to the project in Fremont County District Court. His original attorney withdrew from the representation for health reasons in October 2010.

During the week of Thanksgiving 2010, Reeves spoke to Respondent by phone about the litigation. Respondent told him she was experienced in construction/mechanic's lien cases, even though she had not independently handled such a case. During a subsequent meeting at her office, Respondent said she would handle Reeves's matter for $5,000.00, but she did not disclose in writing the basis or rate of her fees and expenses. Reeves informed Respondent that on November 8, 2010, the court had granted his request for thirty days in which to obtain counsel. After calling the court clerk, Respondent told Reeves that the clerk had directed her to file an entry of appearance electronically and that she would do so by day's end.

On December 6, 2010, Respondent notified the court clerk that she would be entering her appearance for R & G. She gave the clerk her name and registration number and said she had not yet filed her appearance due to computer issues. The next day, the cross-claim defendants in the litigation moved to dismiss R & G's cross claims, citing R & G's failure to obtain counsel within thirty days,

---

**2.** The Court also permitted Respondent to submit as evidence a video file she was displaying on her cell phone containing footage of her goddaughter if Respondent did so within three days. Respondent did not submit that file.

**3.** C.R.C.P. 251.8.6 provides that, upon receipt of a petition from the People, the Colorado Supreme Court may suspend an attorney's license for failure to cooperate in a disciplinary investigation.

**4.** *See* the People's complaint for further detailed findings of fact.

**5.** Respondent's registered business address is 2145 Friendship Place, Colorado Springs, Colorado 80904.

**6.** *See* C.R.C.P. 251.1(b).

as the court had ordered. The court denied the motion, indicating that Respondent had communicated her intent to formally enter an appearance. Yet Respondent still did not do so. She told an attorney for the cross-claim defendants that she filed documents with the court by fax rather than Lexis/Nexis.

Respondent moved her office into her home in or around December 2010 but did not inform Reeves. On December 17, 2010, Reeves's wife paid Respondent $2,500.00 by personal check. The check was deposited in a business account for another business owned by Respondent, Southern Colorado Hood Cleaning and Fire Systems LLC. Reeves's wife paid Respondent another $1,000.00 by personal check on January 13, 2011, and the check was deposited into the same business account.

On December 21, 2010, an attorney for the cross-claim defendants wrote to Respondent, asking her to file an entry of appearance. He received a fax on Respondent's letterhead the next day, stating that Respondent was out of town and would give him a copy of the entry of appearance she had previously filed when she returned. A week later, another attorney for the cross-claim defendants wrote to Respondent, stating that he was awaiting a copy of her entry and asking her to contact him. Both of those attorneys followed up on their attempts to reach Respondent in January 2011, but she did not respond, nor did she further investigate Reeves's claims.

On January 25, 2011, the cross-claim defendants moved for reconsideration of their motion to dismiss the cross claims, citing Respondent's failure to file her entry. When Reeves received the motion, he contacted Respondent and she assured him the issue was a mere formality she would handle. But she still did not file her entry, nor did she respond to the motion.

On February 15, 2011, the cross-claim defendants filed a notice of confession, stating that R & G's response had been due the prior day but had not been filed. The court struck the pleadings and cross claims of R & G filed against each of the cross-claim defendants. On February 25, 2011, Respondent moved to set aside that order, representing that she had filed an entry of appearance—albeit not electronically—and that she had not received the motion to strike until February 23, 2011. In early March, she texted Reeves, saying his case was proceeding satisfactorily. Although the cross-claim defendants responded to her motion to set aside, she did not file a reply.

The court denied Respondent's motion on March 16, 2011. She informed Reeves of the denial in a voicemail message and remarked that she would have to figure out what to do for him. She said, "I don't know if you need to call my malpractice insurance and file a claim on that due to a mistake on my part.... I'll refund your money." She did return Reeves's file and $2,000.00 of his retainer, but she never fulfilled his request for an accounting, nor did she give him any invoices or billing statements during the representation.

On May 5, 2011, the court discharged and released the *lis pendens* on the property in question and dismissed all cross claims with prejudice. Reeves lost any rights under his $62,000.00 mechanic's lien, and his claims for damages of approximately $100.000.00 were dismissed. Reeves asked Respondent for her malpractice insurance information on several occasions, and although she told him her carrier was Cherry Creek Insurance, she did not provide further details. Respondent was not in fact covered by malpractice insurance while she was representing Reeves.

In the course of this matter, Respondent violated Colo. RPC 1.1 (a lawyer shall provide competent legal representation); Colo. RPC 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); Colo. RPC 1.4(a)-(b) (a lawyer shall keep a client reasonably informed about the status of a matter and shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions); Colo. RPC 1.5(b) (when a lawyer has not regularly represented a client, the lawyer must communicate the basis or rate of the fee and expenses in writing); Colo. RPC 1.15(a) (a lawyer shall keep client or third-party funds separate from the lawyer's own property); Colo. RPC 1.15(c) (a lawyer shall keep disputed property separate until there is an

accounting and severance of the disputed interest); Colo. RPC 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and Colo. RPC 8.4(d) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice).

### Mantos Matter

■ On May 6, 2011, Doris Mantos filed a pro se complaint in El Paso County Court, seeking to recover possession of certain premises she owned, as well as damages. On May 17, 2011, Respondent and Mantos executed a fee agreement, which provided that Respondent would represent Mantos in her litigation in exchange for a $500.00 retainer to be deposited in Respondent's trust account. Respondent negotiated Mantos's $500.00 check that same day, but she did not place the funds in her trust account.

On May 18, 2011, Respondent went to the courthouse to set a hearing in Mantos's case, but the clerk and judge were unavailable, and Respondent did not enter her appearance. The same day, the court clerk notified Mantos that a hearing was set for 8:30 a.m. the next morning. Mantos called Respondent several times and left messages informing her of the hearing, but Respondent did not return the calls. At 7:00 a.m. the next day, Mantos called Respondent again. Around 8:20 a.m., Respondent called Mantos's assistant, who said that Mantos was at court. Respondent advised Mantos's assistant that she was ill and that Mantos should ask for a continuance. Respondent said she was too ill to contact Mantos directly, as the assistant suggested. Respondent also failed to contact the court. Mantos appeared pro se at the hearing that day, and her case was dismissed for procedural deficiencies.

After the hearing, Mantos tried to reach Respondent several times. Respondent called Mantos and apologized for missing the hearing. She also agreed to refund Mantos's $500.00 retainer, but she never did so.

In the Mantos representation, Respondent violated Colo. RPC 1.3, 1.15(a), and 8.4(c).

### COLTAF Account and Disciplinary Investigation Matters

■ In May 2011, Respondent paid expenses she owed to attorneys and a private investigator by writing three checks on her COLTAF checking account. She wrote another check from her COLTAF account to pay a business expense in July 2011. When the bank paid two of these checks, Respondent's COLTAF account became overdrawn. In July and September 2011, there were several deposits into and withdrawals from Respondent's COLTAF account for which she lacks records. Between November 2010 and November 2011, Respondent withdrew a total of $11,224.00 in cash in the course of eleven withdrawals from her COLTAF account. Through these actions, Respondent violated Colo. RPC 1.15(a); Colo. RPC 1.15(i) (a lawyer shall not withdraw cash from a trust account); and Colo. RPC 1.15(j) (a lawyer shall maintain and retain appropriate records concerning trust account funds).

In addition, Respondent advised the People during their investigation that she no longer had certain financial records because her former assistant took the files. According to the People's complaint, that assistant never possessed those records and Respondent's contradictory statement violated Colo. RPC 8.4(c) and 8.1(a) (a lawyer shall not knowingly make a false statement of material fact in connection with any disciplinary matter).

### IV. SANCTIONS

■ The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards*") and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[7] In imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, the actual or potential injury caused by the lawyer's misconduct, and any aggravating and mitigating evidence.

---

7.  *See In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

## ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* Respondent violated duties owed to her clients by failing to represent them diligently and competently, providing inadequate communication, failing to explain her fee structure in writing, failing to safeguard client property, and converting client funds.[8] By engaging in conduct prejudicial to the administration of justice, Respondent failed to abide by duties owed to the legal system.[9] Finally, her false statement of a material fact during the People's investigation reflects a violation of a duty owed as a professional.[10]

*Mental State:* The People's complaint, the allegations of which have been deemed admitted by the entry of default, explicitly establishes that Respondent knowingly converted $1,500.00 from Reeves and $500.00 from Mantos. Despite Respondent's protestations at the sanctions hearing, the complaint also establishes that she knowingly made a false statement of material fact in connection with a disciplinary matter.

Respondent's state of mind with respect to the other rule violations addressed in this case requires examination of the facts established in the complaint and Respondent's testimony at the sanctions hearing.

The remaining claims in the Reeves matter are Respondent's violations of Colo. RPC 1.1, 1.3, 1.4(a)-(b), 1.5(b), 1.15(a) & (c), and 8.4(d). At the sanctions hearing, Respondent admitted that she "made the indiscretion of agreeing to take the case when [she] didn't understand the full magnitude of the issues involved." She testified that she informed Reeves she would not begin work on his matter until she received the full retainer, but due to a deadline she attempted to enter her appearance before receiving full payment. In addition, she testified that she faxed an entry of appearance to the court but later learned she was required to electronically file that document. Respondent explained that she had depended on her paralegal, who left her employ, to file documents electronically and to manage her COLTAF

accounts. Although she claimed she was hamstrung by Reeves's failure to give her the information she needed to proceed with the representation, she admitted she made a mistake that harmed Reeves. The facts established by the complaint, coupled with Respondent's own testimony, lead the Court to the conclusion that all of Respondent's misconduct in the Reeves matter was knowing for purposes of the ABA *Standards*; although she did not mean to violate the ethical rules or to harm her client, she had "conscious awareness of the nature or attendant circumstances of [her] conduct." [11]

Turning to the Mantos matter, Respondent testified that Mantos had agreed to inform the court Respondent was her attorney, that the judicial division hearing Mantos's case operated in an especially informal matter, and that Respondent did not know of the hearing scheduled for May 19, 2011. This testimony, however, conflicts with the facts in the People's complaint, which establish that Mantos informed Respondent of the hearing scheduled for May 19, 2011, and that Respondent failed to attend the hearing or take other appropriate action. As such, the Court must find Respondent knowingly failed to diligently represent Mantos. The Court also concludes that Respondent knowingly failed to safeguard Mantos's retainer.

Finally, Respondent testified that she did not understand the rules governing COLTAF accounts. But licensed attorneys are duty-bound to learn the Rules of Professional Conduct, and the Court finds that Respondent violated Colo. RPC 1.15(a), (i), and (j) knowingly.

*Injury:* The People's complaint establishes that Reeves lost all rights under his $62,000.00 mechanic's lien and that his claims for damages of approximately $100,000.00 were dismissed. It is unclear whether Reeves would have succeeded on those claims had he enjoyed the benefit of competent counsel. The Court finds that Respondent caused Reeves actual injury by converting $1,500.00 and she caused him serious

**8.** ABA *Standard* 4.0.

**9.** ABA *Standard* 6.0.

**10.** ABA *Standard* 7.0.

**11.** ABA *Standards* § IV at 19.

potential injury by depriving him of the opportunity to pursue his claims. Respondent testified that Mantos re-filed her case and secured a positive outcome. Respondent also testified that she helped Mantos by alerting her to an error in her original pro se filing. The Court concludes that Respondent's misconduct did not significantly harm Mantos's legal interests, but Mantos did suffer the loss of her $500.00 retainer. Finally, Respondent's COLTAF account violations caused potential harm by placing an untold number of clients' funds at risk, and Respondent caused some harm to the legal profession by causing opposing counsel to waste resources and by impeding the People's investigation.

### ABA *Standards* 4.0–7.0—Presumptive Sanction

Under the ABA *Standards,* the presumptive sanction for Respondent's misconduct is disbarment. ABA *Standard* 4.11 provides that disbarment is appropriate when a lawyer knowingly converts client property and thereby causes injury or potential injury to the client. Respondent's other misconduct carries less severe presumptive sanctions.[12]

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

Aggravating circumstances are considerations or factors that may justify an increase in the degree of discipline to be imposed, while mitigating circumstances may justify a reduction in the severity of the sanction.[13] The Court considers evidence of the following aggravating and mitigating circumstances in deciding the appropriate sanction.

*Dishonest or Selfish Motive—9.22(a):* The People urge the Court to find that Respon-

dent acted with a dishonest or selfish motive when she converted funds belonging to Reeves and Mantos. The Court declines to do so. Although Respondent was aware of the nature of her actions, the evidence falls short of demonstrating that she meant to harm her clients and reap a personal financial benefit. Respondent's testimony reflected significant concern about her clients' well-being and suggested that her conversion of funds occurred due to her disorganization, her inability to handle the growing demands of her practice and her personal life, a failure to recognize the potentially serious consequences of disregarding procedural requirements, and a lack of resolve to recognize and tackle incipient problems before they worsened.

*Pattern of Misconduct—9.22(c):* Respondent engaged in similar misconduct in two client matters during the same general timeframe, demonstrating a nascent pattern of misconduct.[14]

*Multiple Offenses—9.22(d):* Respondent committed multiple distinct types of misconduct, ranging from inadequate communication to lack of diligence to dishonesty.

*Bad–Faith Obstruction of the Disciplinary Proceeding—9.22(e):* The People ask the Court to apply this aggravating factor, noting that not only did Respondent fail to respond to the complaint or motion for default, but she also made a false statement of fact during the disciplinary investigation. The Court generally does not find that an attorney's failure to answer a complaint or motion for default, standing alone, amounts to bad-faith obstructionism.[15] In light of Respondent's trying personal circumstances and her deci-

---

12. For example, the Court finds that ABA *Standard* 4.4 and the commentary thereto establish suspension as the presumptive sanction for Respondent's violation of Colo. RPC 1.3, while ABA *Standard* 5.13 classifies public censure as the presumptive sanction for her violation of Colo. RPC 8.1(a).

13. *See* ABA *Standards* 9.21 & 9.31.

14. *See People v. Sather,* 936 P.2d 576, 579 (Colo. 1997) (accepting a conditional admission of misconduct and stating that a letter of admonition issued the previous year was "evidence of a pattern of misconduct" under ABA *Standard*

9.22(c) because it "concern[ed] events apparently occurring during the same time period as in this case"); *In re Reardon,* 759 A.2d 568, 577 (Del. 2000) ("A pattern may be discerned from two or more recognizably consistent acts that serve as a predictor of future misconduct.").

15. *See* ABA *Standard* 9.22(e), cmt. (citing *Comm. on Prof'l Ethics & Conduct of Iowa State Bar Ass'n v. Brodsky,* 318 N.W.2d 180, 183 (Iowa 1982) (treating as an aggravating factor that a respondent gave disciplinary authorities a "web of responses that was replete with inconsistencies and falsehoods")).

sion to attend the sanctions hearing, it would be particularly harsh to label her earlier failure to participate in the disciplinary proceeding as bad-faith obstructionism. Respondent's false statement of fact during the People's investigation is addressed below.

*Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process—9.22(f):* The complaint establishes that Respondent violated Colo. RPC 8.1(a) by knowingly making a false statement of material fact to the People during their investigation, and the People seek application of ABA *Standard* 9.22(f) on that basis. Given that Respondent's false statement forms the basis for an established rule violation, it would be unfair to also treat that conduct as an aggravating factor. Indeed, this Court has been unable to find any cases in which a respondent was found to have violated Colo. RPC 8.1(a) where the Colorado Supreme Court also applied ABA *Standard* 9.22(f) based on that same misconduct. Accordingly, the Court declines to apply that factor here.

*Substantial Experience in the Practice of Law—9.22(i):* Respondent received her law license in 2001. She is therefore a longstanding practitioner of whom the bar and clients should rightly expect particularly high standards of professionalism.

*Indifference to Making Restitution—9.22(j):* The People ask the Court to consider this factor to reflect Respondent's failure to repay the funds she converted. Respondent testified that she intends to make full restitution to Reeves and Mantos but cannot now afford to do so; indeed, she testified that she has lost her job and home and recently was unable even to pay for her anti-depressants. The Court will apply this factor in aggravation but will not accord it great weight, given Respondent's difficult financial circumstances and her repayment of $2,000.00 to Reeves.

*Absence of Prior Disciplinary Record—9.32(a):* The Court considers Respondent's lack of prior discipline since she began practice in 2001 as a significant mitigating factor.

*Personal or Emotional Problems—9.32(c):* Respondent's loss of her job and home, her struggles with depression, and her goddaughter's serious illness are substantial personal or emotional problems. The Court finds that these problems qualify as a significant mitigating factor.

*Character or Reputation—9.32(g):* Respondent introduced into evidence fourteen thank you cards and questionnaires from clients, mostly from 2008 and 2009, in which clients praise Respondent's professionalism and dedication. The fact that Respondent drafted questionnaires to solicit client feedback on matters such as her responsiveness, the clarity of her explanations, her fees, and her concern about clients indicates to the Court that Respondent cared about maintaining a high level of professionalism. On the other hand, Respondent herself selected the client attestations to introduce into evidence, and they do not necessarily paint a complete picture of her reputation. The Court accords moderate, but not substantial, weight to Respondent's character as a mitigating factor.

*Physical Disability—9.32(h):* At the sanctions hearing, Respondent testified that she has had ongoing struggles with pain and has suffered from degenerative disc disease, a torn rotator cuff, and a concussion. She also mentioned that she has been involved in multiple car accidents, including one in December 2011 and one in 2009. She conceded, however, that she did not believe any physical ailments prevented her from properly handling the Mantos representation. Given the lack of strong evidence as to Respondent's physical disabilities at the time of her misconduct, the Court accords this factor relatively little weight.

*Mental Disability or Chemical Dependency—9.32(h):* Respondent testified that she struggles with depression and ADHD, and she also mentioned that she often forgets and misplaces things. She said she is "100 percent dependent" on the medications she takes for depression and ADHD. However, to apply ABA *Standard* 9.32(i), the Court must receive medical evidence and must find on that basis that a mental disability caused the misconduct, the respondent has recovered from the disability, and recurrence of misconduct is unlikely. Respondent has not satisfied those requirements, and the Court

therefore cannot apply this factor in mitigation.

*Remorse—9.32(l):* Based upon Respondent's manner and demeanor on the witness stand, the Court finds she is genuinely remorseful for her misconduct. When recounting how she failed her clients, Respondent's demeanor reflected both shame and sorrow. She was also sincere in expressing her commitment to serving her clients, particularly those who are needy. The Court accords this mitigating factor considerable weight.

### Analysis Under ABA *Standards* and Colorado Case Law

■ The People argue that the appropriate sanction in this matter is disbarment. Respondent did not directly address what sanction she believes is warranted. However, she thinks she is an asset to her clients and that, with the aid of her anti-depressants, she could ably continue to represent her remaining five clients, whom she is "charging barely anything." Yet she also recognizes that she is unable to "practice on the level she used to" and that it would be wise for her to refrain from acquiring new clients over the next year.

■ Disbarment certainly would have been appropriate had Respondent not appeared at the sanctions hearing and presented evidence of mitigation. Given that she did, however, it is a very close call whether the five applicable mitigating factors—including three weighty mitigators—call for a departure from the presumption of disbarment. In its analysis, the Court pays particular note to Respondent's decision to attend the sanctions hearing and to take responsibility for her misconduct—albeit at the eleventh hour. And the Court is mindful that the purpose of considering mitigating factors is to "gauge the level of danger that an attorney poses to the public and, ideally, to arrive at a disciplinary sanction that adequately balances the seriousness of the danger against the gravity of the misconduct." [16] With those factors in view, the Court finds that the appropriate sanction is suspension for three years, after which time Respondent may petition for reinstatement of her law license pursuant to C.R.C.P. 251.29(c).

■ The Court also looks to Colorado Supreme Court case law for guidance in its determination. The Colorado Supreme Court has on numerous occasions made clear that, "[i]n situations where a lawyer knowingly misappropriates client funds, the appropriate sanction is typically disbarment." [17] Yet the *Fischer* opinion concluded that a hearing board had "overemphasized the notion of a 'presumption of disbarment' ... and undervalued the importance of other factors in determining the needs of the public." [18] In that opinion, Justice Coats commented that "[e]ven 'knowing conversions' of funds entrusted to attorneys do not always present the same need for sanctions." [19]

With *Fischer* in mind, this Court has closely reviewed case law from the last two decades involving knowing conversions in order to gauge whether departure from the presumption of disbarment is warranted here. The Court is mindful that cases decided before the adoption of the current disciplinary rules in 1999 may merit less deference than more recent decisions, such as *Fischer*, and the Court notes that the varying circumstances presented in disciplinary cases make comparison challenging.[20]

The Colorado Supreme Court appears to be highly reluctant to deviate from a presumption of disbarment when three or fewer mitigating factors are present. For instance, in *Varallo*, absence of a prior disciplinary record, evidence of good character, and client satisfaction with the lawyer were insufficient to overcome the presumption of disbarment

---

16. *In re Cleland*, 2 P.3d 700, 705 (Colo.2000).

17. *In re Haines*, 177 P.3d 1239, 1250 (Colo. 2008).

18. *In re Fischer*, 89 P.3d 817, 822 (Colo.2004).

19. *Id.* (citing *People v. Nulan*, 820 P.2d 1117, 1119 (Colo.1991), in which an attorney who intentionally misapplied non-client funds was suspended for just sixty days).

20. *In re Attorney F.*, 285 P.3d 322, 327 (Colo. 2012); *In re Rosen*, 198 P.3d 116, 121 (Colo. 2008).

for the lawyer's knowing conversions.[21] Likewise, where a lawyer converted a large amount of client funds through fraudulent billing and double-billing in the *Ogborn* matter, the Colorado Supreme Court found three mitigating factors insufficient to justify a less stringent sanction than disbarment.[22]

Another principle evident from case law is that mitigating factors do not carry great significance in cases involving particularly egregious acts of knowing conversion. For instance, in the *Lefly* matter, an attorney exploited two separate clients' vulnerabilities by misrepresenting that he had not received substantial settlement funds, instead intentionally converting those funds to his own use.[23] Emphasizing the "grave," extensive, and intentional nature of the misconduct, the *Lefly* court found that the presence of several mitigating factors did not justify a departure from the presumption of disbarment.[24] Somewhat similarly, in the *Guyerson* case, the Colorado Supreme Court disbarred a lawyer who intentionally converted law firm funds through fraudulent billing practices and later pled guilty to felony theft, notwithstanding the presence of five mitigating factors.[25] In deciding that a lesser sanction would be inappropriate, the justices underscored the "manner and extent" of the lawyer's intentional conversions.[26]

The Colorado Supreme Court reached a different conclusion in the *Lujan* decision, where a lawyer stole from her law firm and inadvertently included fraudulent charges on client bills, giving rise to a presumptive sanction of disbarment.[27] The *Lujan* court determined that a suspension lasting just one year was appropriate, taking into account four aggravating factors and eight mitigating factors.[28]

Ultimately, the Court finds that this case is more akin to *Lujan* and *Fischer* than to *Varallo*, *Ogborn*, *Lefly*, and *Guyerson*. Although Respondent's misconduct was knowing and serious and deserves a substantial sanction, it was not intentional or particularly egregious in nature. The Court believes that, should Respondent overcome her personal and emotional difficulties and re-double her commitment to understanding and abiding by her professional duties, she could in three year's time again commendably serve the profession and her clients.

## V. CONCLUSION

Respondent engaged in serious misconduct by knowingly converting client funds, neglecting client matters, and violating other rules. Although she defaulted in the disciplinary phase of this proceeding, she appeared at the sanctions hearing and introduced evidence of substantial mitigating factors. Those mitigating factors convince the Court that Respondent's misconduct warrants a three-year suspension.

## VI. ORDER

The Court therefore **ORDERS:**

1. **SUSAN COCHRANE**, attorney registration number 33077, is **SUSPENDED for THREE YEARS.** The **SUSPENSION SHALL** take effect only upon issuance of an "Order and Notice of Suspension." [29]

---

21. *People v. Varallo*, 913 P.2d 1, 12 (Colo.1996).

22. *People v. Ogborn*, 887 P.2d 21, 24 (Colo.1994); see also *People v. Young*, 864 P.2d 563, 564 (Colo.1993) (finding three mitigating factors insufficient to justify a suspension rather than disbarment for knowing conversion).

23. *People v. Lefly*, 902 P.2d 361, 362–63 (Colo. 1995).

24. *Id.* at 364–65.

25. *People v. Guyerson*, 898 P.2d 1062, 1063–64 (Colo.1995).

26. *Id.* at 1064; see also *People v. Finesilver*, 826 P.2d 1256, 1259 (Colo.1992) (emphasizing the "nature and the extent" of an attorney's misconduct, which involved conversion of over $300,000.00 from numerous parties, in determining that mitigating factors did not call for a sanction less severe than disbarment).

27. *People v. Lujan*, 890 P.2d 109, 112 (Colo. 1995).

28. *Id.*

29. In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.

2. Respondent **SHALL** pay $1,500.00 in restitution to Greg Reeves and $500.00 in restitution to Doris Mantos, or, if the Colorado Attorney's Fund for Client Protection has reimbursed these clients, Respondent **SHALL** reimburse the Fund for its disbursements.

3. Respondent **SHALL** file any post-hearing motion or application for stay pending appeal with the Court **on or before February 8, 2013.** No extensions of time will be granted. If Respondent files a post-hearing motion or an application for stay pending appeal, the People **SHALL** file any response thereto within seven days, unless otherwise ordered by the Court.

4. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** submit a "Statement of Costs" within fourteen days from the date of this order. Respondent's response to the People's statement, if any, must be filed no later than fourteen days thereafter.

5. If she has not yet done so, Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation. Respondent also **SHALL** file with the Court, within fourteen days of issuance of the "Order and Notice of Suspension," an affidavit complying with C.R.C.P. 251.28(d).