1
 THE PEOPLE OF THE STATE OF COLORADO Complainant v. EKAETTE PATTY-ANNE EDDINGS, New York #4111217 Respondent No. 25PDJ28Office of the Presiding Disciplinary Judge of the Supreme Court of ColoradoMay 2, 2026
          
 OPINION IMPOSING SANCTIONS UNDER C.R.C.P.
 242.31(a)
 
 
           BRYON
 M. LARGE PRESIDING DISCIPLINARY JUDGE
 
 
          SUMMARY
 
 
          On
 April 14, 2026, following a hearing on the sanctions, a
 hearing board disbarred Ekaette Patty-Anne Eddings (New York
 attorney registration number 4111217) from the practice of
 law in Colorado. The disbarment is scheduled to take effect
 on May 19, 2026.
 
 
          In
 2023, Eddings accepted a client's immigration case. The
 client paid Eddings in advance for the work, but Eddings
 deposited most of the advance payment into her personal
 account even though she knew she had not earned the money.
 During the representation, Eddings failed to keep her client
 informed about the status of his matter and only infrequently
 responded to his reasonable requests for updates about his
 case. When, one year into the representation, the client
 learned Eddings had not submitted the documents he had paid
 her to prepare and file with immigration authorities, he
 demanded she refund his fee. Eddings refunded only a portion
 of the fee and converted the rest for her personal use.
 
 
          Based
 on the client's complaint, disciplinary authorities
 petitioned to suspend Eddings from the practice of law on an
 interim basis. Soon after, Eddings offered to continue the
 representation if the client withdrew his complaint. During
 her disciplinary proceeding, Eddings did not comply with
 discovery rules and orders, which resulted in the imposition
 of sanctions against her, including entry of default on five
 of the People's claims.
 
 
          Through
 her conduct in the client matter, Eddings violated Colo. RPC
 1.4(a)(3) (a lawyer must keep a client reasonably informed
 about the status of the matter); Colo. RPC 1.4(a)(4) (a
 lawyer must promptly comply with reasonable requests for
 information); Colo. RPC 1.15A(a) (a lawyer must hold client
 property separate from the lawyer's own property); Colo.
 RPC 1.16(d) (a lawyer must protect a client's interests
 upon termination of the representation, including by
 returning any unearned fees to the client); and Colo. RPC
 8.4(c) (it is professional misconduct for a lawyer to engage
 in conduct involving dishonesty, fraud, deceit, or
 misrepresentation).
 
 2
 
          I.
 PROCEDURAL HISTORY
 
 
          This
 matter began as an interim suspension proceeding. On April
 17, 2025, Jacob M. Vos of the Office of Attorney Regulation
 Counsel ("the People") filed an amended petition
 for interim suspension. The same day, Presiding Disciplinary
 Judge Bryon M. Large ("the PDJ") issued an order to
 Ekaette Patty-Anne Eddings ("Respondent"),
 directing her to show cause why she should not be suspended
 from the practice of law on an interim basis. Respondent did
 not respond to the show cause order, and on May 7, 2025, the
 Colorado Supreme Court entered an order suspending her from
 the practice of law in Colorado on an interim basis.
 
 
          On May
 15, 2025, Vos filed a complaint on the People's behalf
 with the PDJ, alleging that Respondent violated ten Colorado
 Rules of Professional Conduct. Respondent answered on July 2,
 2025. The PDJ then held a scheduling conference and set this
 matter for a two-day disciplinary hearing to take place in
 January 2026.
 
 
          In
 October 2025, Respondent twice sought additional time to
 answer the People's combined discovery requests. In each
 instance, the People provided a courtesy extension after
 Respondent promised to provide her responses by the new
 deadline. But Respondent did not answer the People's
 discovery despite having additional time to do so, and the
 People moved to compel her discovery responses on November 6,
 2025. The PDJ ordered an expedited briefing schedule and held
 a hearing on the People's motion on November 14, 2025.
 Respondent did not respond to the motion to compel, but she
 did appear for the hearing, where she argued that she
 included all the responsive documents as exhibits when she
 answered the People's complaint. Respondent also disputed
 Colorado's jurisdiction in the matter, and the PDJ
 advised her that her challenge to jurisdiction had to be made
 via written motion and, in the meantime, that she was
 required to respond to the People's pending discovery
 requests. After that motions hearing in November 2025, the
 PDJ granted the People's motion to compel and ordered
 Respondent to answer the People's discovery by December
 5, 2025, which was the date Respondent requested at the
 hearing. In addition, the PDJ reset the disciplinary hearing
 for March 19-20, 2026.
 
 
          Respondent
 did not answer the discovery requests by the ordered
 deadline. On December 8, 2025, she filed two motions. In one,
 she challenged Colorado's jurisdiction and moved to
 dismiss the complaint. In the other, she requested an
 extension of time to file discovery.
 
 
          Also on
 December 8, 2025, Respondent asked the People via email to
 resend their discovery requests to her and assured them she
 would provide responses within two days. The People promptly
 responded with their requests and agreed to a further
 deadline extension to December 10, 2025, to submit her
 responses; the People advised Respondent that they would seek
 sanctions if she did not provide her responses by that time.
 Respondent did not do so, and on December 11, 2025, the
 People moved for default as a sanction under C.R.C.P. 37(d)
 for her failure to answer discovery.
 
 
          Meanwhile,
 on January 9, 2026, the PDJ issued an order requiring
 Respondent to file a status report with an update about
 discovery no later than January 16, 2026. She did not do so.
 
 3
 
          In a
 pair of orders issued on January 20, 2026, the PDJ denied
 Respondent's motion challenging jurisdiction and granted
 the People's motion for discovery sanctions. Rather than
 determine the sanction at that time, however, the PDJ allowed
 Respondent an opportunity to show cause by February 3, 2026,
 why the PDJ should not impose a severe sanction, including
 entering default against her. Respondent did not respond to
 the show cause order. On February 4, 2026, she did, however,
 respond to a pending motion in which the People sought to
 extend deposition and discovery deadlines. In that response,
 she represented that she had fully cooperated with the
 discovery process and had produced discovery responses on
 February 3, 2026. She attributed her delay in part to her
 decision to await the outcome of her jurisdiction challenge,
 which, she argued, determined whether discovery was needed.
 
 
          At the
 PDJ's request, the People filed a status report on
 February 4, 2026, in which they confirmed that Respondent had
 produced some discovery responses the prior day. But the
 People complained that the responses were incomplete; that
 the only documents Respondent produced were those already
 attached to her answer; that she improperly invoked a
 privilege that her client had already waived; and that she
 failed to produce payment records or an accounting of the
 client funds the People allege she misappropriated. The
 People also asserted that Respondent had still not provided
 her initial disclosures in the case. On February 6, 2026,
 Respondent responded to the status report by repeating, in
 large part, the statements in her submission filed two days
 earlier.
 
 
          On
 February 6, 2026, the PDJ issued an order sanctioning
 Respondent under C.R.C.P. 37(d). In that order, the PDJ found
 that Respondent engaged in a pattern of seeking and obtaining
 extensions based on vows to answer discovery only to then
 selectively participate in the proceeding; that she relied on
 her motion challenging jurisdiction as pretext for failing to
 meet established and negotiated discovery deadlines; that her
 conduct amounted to a flagrant and bad faith disregard of
 discovery obligations; and that her conduct prejudiced the
 People, who have no means other than propounding discovery
 requests on Respondent to access financial records that would
 illuminate how she handled client funds. Because Respondent
 did not respond to the show cause order of January 20, 2026,
 the PDJ did not have the benefit of her position as to the
 appropriate discovery sanction to impose. The PDJ concluded
 that the least severe sanction commensurate with
 Respondent's culpability and the People's prejudice
 was to enter default against her on Claims 2, 3, 6, 7, and 9
 and to deem admitted paragraphs 31, 32, 33, and 68 of the
 complaint. As to Claims 1, 4, 5, 8, and 10 as well as any
 mitigating factors that Respondent could advance under the
 ABA Standards for Imposing Lawyer Sanctions
 ("ABA Standard'), [1] the PDJ's order
 prohibited Respondent from presenting any evidence that she
 had not already produced to the People and from eliciting
 testimony from witnesses, other than herself, that she had
 not yet identified as individuals who may have information
 relevant to this matter. Finally, the PDJ concluded that
 Respondent had engaged in the bad faith obstruction of the
 disciplinary proceeding by intentionally failing to comply
 with the PDJ's discovery rules and by flagrantly ignoring
 and disobeying the PDJ's orders. The PDJ thus also
 entered an instruction directing the Hearing Board to apply
 ABA Standard 9.22(e) in its sanctions analysis.
 
 4
 
          On
 February 26, 2026, the People moved to dismiss Claims 1,4, 5,
 8, and 10 in the interests of justice and judicial economy
 based on the evidence available to them and the complaining
 witness's unwillingness to appear at the hearing. On
 March 3, 2026, the PDJ dismissed those claims and converted
 the disciplinary hearing to a hearing on the sanctions for
 the claims on which default had entered.
 
 
          On
 March 19, 2026, a Hearing Board comprising the PDJ, lawyer
 Mary Kominek Linden, and citizen member Mark McIntyre held a
 hearing under C.R.C.P. 242.30. Gregory G. Sapakoff attended
 for the People.[2] Respondent failed to appear, even though
 the PDJ began the hearing at 9:18 a.m., eighteen minutes
 after the appointed start time, to provide Respondent the
 additional opportunity to participate.[3] During the
 hearing, the Hearing Board received testimony from the
 People's investigator, Donna Scherer, and the PDJ
 admitted stipulated exhibit S1.
 
 
          II.
 FACTS AND RULE VIOLATIONS ESTABLISHED ON DEFAULT
 
 
          Respondent
 is admitted to the practice of law in New York under
 registration number 4111217. Although Respondent does not
 hold a Colorado law license, the Colorado Supreme Court has
 jurisdiction over her because she practices in Colorado
 pursuant to federal law. At the time Respondent filed her
 answer in this case, she lived in Highlands Ranch, Colorado,
 and used an address in Highlands Ranch as her business
 mailing address.
 
 
          In
 February 2023, MacKendy Mondesir hired Respondent for an
 immigration case. Respondent agreed to prepare and file an
 I-130 Petition for Alien Relative and I-485 Application to
 Register Permanent Residence or Adjust Status on
 Mondesir's behalf.
 
 
          Mondesir
 paid Respondent $3,159.00 in advance for the representation.
 Respondent deposited $2,609.00 of Mondesir's funds into
 her personal checking account. She did so even though she
 knew she had not yet performed services for Mondesir. Indeed,
 Respondent did not complete any useful work for Mondesir.
 Mondesir regularly called Respondent to ask for updates on
 his immigration matter. Respondent rarely returned
 Mondesir's voicemails or telephone calls.
 
 
          In May
 2024, Mondesir checked the status of his matter with U.S.
 Citizenship and Immigration Services and learned that it did
 not have anything on file under his name. Upon learning that
 Respondent had not filed anything on his behalf, Mondesir
 confronted Respondent and requested a refund. Though
 Respondent refunded $575.00 to Mondesir, she took the
 remainder of his funds for her own personal use. By the end
 of December 2024, Respondent's trust account had a
 balance of only $1.07. At the same time, her checking account
 held only $0.51.
 
 5
 
          On
 April 17, 2025, the People filed an amended petition for
 interim suspension against Respondent with the Colorado
 Supreme Court. In late April 2025, Respondent spoke with
 Mondesir and offered to continue representing him in his
 immigration matter, but only if he withdrew his request for
 investigation with the People.[4] On May 2, 2025, the People
 received a document tilted "Complaint Withdrawal"
 from Mondesir, which was dated the same day. The document
 provided that "I, Mackendy Mondesir hereby WITHDRAW The
 Complaint that I signed on . april 14-2025 I have received
 promises, I, the undersigned, do not wish to proceed with the
 Complaint that I filed against Eddings, Ekaette Patty
 because: The issues I raised in my complaint are now
 resolved."[5]
 
 
          Claims
 2 and 3 - Colo. RPC 1.4(a)(3) and Colo. RPC 1.4(a)(4)
 
 
          Colo.
 RPC 1.4(a)(3) provides that a lawyer must "keep the
 client reasonably informed about the status of the
 matter." Respondent breached this rule by failing to
 keep Mondesir informed about the lack of progress in his
 matter throughout the representation. Because Respondent
 rarely returned Mondesir's communications and failed to
 provide information on the status of Mondesir's
 immigration matter despite his reasonable requests for
 updates, Respondent also violated Colo. RPC 1.4(a)(4), which
 requires a lawyer to promptly comply with reasonable requests
 for information.
 
 
          Claim
 6 - Colo. RPC 1.15A(a)
 
 
          As
 relevant here, under Colo. RPC 1.15A(a), a lawyer must keep
 separate the lawyer's property from client property in
 the lawyer's possession in connection with a
 representation. A lawyer must keep client funds in the
 lawyer's possession in compliant trust accounts.
 Respondent violated this rule when she failed to hold
 Mondesir's funds separate from her own property.
 
 
          Claim
 7 - Colo. RPC 1.16(d)
 
 
          Among
 other requirements, Colo. RPC 1.16(d) mandates that a lawyer,
 upon termination of a representation, must take steps to the
 extent reasonably practicable to protect a client's
 interests, including by refunding the client's unearned
 funds paid to the lawyer. When Mondesir's representation
 ended, Respondent failed to refund his advanced fees in
 violation of this rule.
 
 6
 
          Claim
 9 - Colo. RPC 8.4(c)
 
 
          Colo.
 RPC 8.4(c) prohibits a lawyer from engaging in conduct
 involving dishonesty, fraud, deceit, or misrepresentation. A
 lawyer's knowing conversion of client funds violates
 Colo. RPC 8.4(c). Knowing conversion occurs when a lawyer
 takes money that has been entrusted to the lawyer by another
 person, knowing that the money belongs to another person, and
 knowing that the lawyer has not been authorized to use the
 money.[6]
 
 
          As
 established on entry of default on this claim, Respondent
 knew she did not complete any useful work for Mondesir during
 the representation. Even so, she knowingly deposited his
 funds, which she had not earned, into her personal checking
 account and converted the funds to her own personal use. She
 knowingly converted all but $575.00 of the funds Mondesir
 paid her. She thereby violated Colo. RPC 8.4(c).
 
 
          III.
 SANCTIONS
 
 
          The ABA
 Standards and Colorado Supreme Court caselaw guide
 the imposition of sanctions for lawyer
 misconduct.[7] When imposing a sanction after finding
 lawyer misconduct, the Hearing Board must consider the duty
 the lawyer violated, the lawyer's mental state, and the
 actual or potential injury the lawyer's misconduct
 caused. These three variables yield a presumptive sanction
 that the Hearing Board may then adjust based on aggravating
 and mitigating factors.
 
 
          ABA
 Standard 3 .0 - Duty, Mental State, and Injury
 
 
          Duty.
 The rule violations established on default show that
 Respondent breached duties owed to her client, Mondesir,
 including her duty to safeguard his funds, her duty to
 reasonably communicate with him about his case, and her duty
 to reasonably protect his interests after the representation
 ended.
 
 
          Mental
 State. The order entering default established that
 Respondent knowingly converted Mondesir's retainer in
 violation of Colo. RPC 8.4(c). We also find that Respondent
 acted knowingly with respect to the remainder of the claims
 established on default. Colo. RPC 1.15(A)(a), because she
 knew she was depositing Mondesir's retainer into her
 checking account; Colo. RPC 1.16(d), by failing to refund
 Mondesir's funds, even though she knew she had not
 performed work to earn any of that money; and Colo. RPC
 1.4(a)(3) and Colo. RPC 1.4(a)(4), because Respondent's
 continued and persistent misconduct during the approximately
 thirteenmonth representation convinces us that she acted with
 a more culpable state of mind.[8]
 
 7
 
          Irjury.
 Based on the facts and rule violations established on
 default, we find that Respondent caused Mondesir actual
 injury when she converted his money and failed to refund to
 him $2,584.00 in unearned fees. While Mondesir's document
 withdrawing his complaint stated that the grounds for his
 complaint had been resolved, we have no evidence that
 Respondent returned any more than $575.00 to him or that she
 performed services to earn the remainder of his full
 retainer. Indeed, because Respondent's interim suspension
 in Colorado effectively precludes her from practicing
 immigration law, her offer to Mondesir in late April 2025 to
 continue with his case if he withdrew his complaint against
 her strikes us as not only egregious but ultimately
 hollow.[9]
 
 
          In
 addition, we infer harm to the migrant community and to the
 legal profession. When a member of the migrant community, in
 an attempt to normalize their legal status, hires an
 immigration lawyer to navigate the system, that member
 depends on the lawyer's knowledge of immigration
 law—a highly specialized and often arcane area of law.
 When the lawyer betrays that immigration client's trust
 and breaches duties the lawyer owes to the client, the lawyer
 undercuts public faith in the lawyer-client relationship and
 in lawyers generally. This behavior also harms the migrant
 community, which is less likely to trust and work within the
 immigration system.
 
 
          ABA
 Standards 4.0-7.0 - Presumptive Sanction
 
 
          ABA
 Standard 4.11 sets disbarment as the presumptive
 sanction when a lawyer knowingly converts client property and
 causes injury or potential injury to a client.
 Respondent's knowing violation of Colo. RPC 1.15A(a)
 implicates ABA Standard4 .12, which provides for
 suspension when a lawyer knows or should know that the lawyer
 is dealing improperly with client property and causes injury
 or potential injury to a client. For Respondent's Colo.
 RPC 1.4 violations, we look to ABA Standard 4
 .42(b), under which suspension is generally appropriate when
 a lawyer engages in a pattern of neglect and causes injury or
 potential injury to a client. Also applicable here, ABA
 Standard 7.2 states that suspension is generally
 appropriate when a lawyer knowingly engages in conduct that
 is a violation of a duty owed as a professional—here,
 when Respondent failed to refund Mondesir's unearned fee
 in violation of Colo. RPC 1.16—and causes injury or
 potential injury to a client, the public, or the legal
 system.
 
 
          Because
 the ABA Standards recommend that in cases involving
 multiple types of lawyer misconduct, the ultimate sanction
 should be at least consistent with, and generally greater
 than, the sanction for the most serious disciplinary
 violation, we find that the presumptive sanction for
 Respondent's misconduct is disbarment.[10]
 
 8
 
          ABA
 Standard 9.0 - Aggravating and Mitigating Factors
 
 
          Aggravating
 circumstances include any considerations that justify an
 increase in the degree of the sanction to be imposed, while
 mitigating factors warrant a reduction in the severity of the
 sanction.[11] As explained below, we apply four
 factors in aggravation, two of which warrant substantial
 weight. No mitigating factors apply.
 
 
          Aggravating
 Factors
 
 
          Prior
 disciplinary offenses - 922(a): The People ask that we
 apply this factor based on Respondent's 2017 suspension
 in New York for failure to pay required lawyer registration
 fees, which in turn triggered her indefinite suspension from
 federal immigration practice.[12] The People concede this factor
 should be given only minimal weight, noting that the New York
 sanction is equivalent to an administrative, rather than a
 disciplinary, suspension in Colorado, and that it does not
 involve the type of misconduct at issue in this case. Because
 we do not view Respondent's prior administrative
 suspension as discipline, we decline to apply this factor.
 
 
          We do,
 however, see in Respondent's failure to pay mandatory
 registration fees a prelude to her cavalier approach to
 practicing law and lassitude toward maintaining her law
 license that she has exhibited in this proceeding.
 
 
          Multiple
 offenses - 922(d): The People ask that we apply this
 factor based on the five different rule violations in this
 case. We decline to do so, as the rule violations here spring
 from a common predicate and arise from a single client
 matter. Because this factor is not salient to our decision in
 this case, we do not apply it.
 
 
          Bad
 faith obstruction of the disciplinary proceeding -
 9.22(e): We apply this factor, consistent with the
 PDJ's instruction in the order dated February 6, 2026,
 sanctioning Respondent under C.R.C.P. 37(d). Other facts
 further support our application of this factor. Most
 concerning, Respondent contacted Mondesir and offered to
 continue representing him in his immigration case if he
 withdrew his request for investigation. At the hearing on the
 sanctions, the People's investigator, Scherer, testified
 that the People received Mondesir's letter withdrawing
 his complaint on May 2, 2025, just over two weeks after the
 People petitioned for Respondent's interim suspension.
 Scherer also testified that she spoke with Mondesir's
 spouse by telephone in August 2025 to discuss the
 Mondesirs' appearance at Respondent's hearing in this
 matter. The Mondesirs, who reside out of state, did not want
 to testify and were not interested in providing remote
 testimony, Scherer said. Considering these facts, we regard
 Respondent's quid pro quo offer to Mondesir as evidence
 that she sought to scuttle the disciplinary proceeding at its
 
 9
 
 inception. As a direct result of her actions, we must decide
 this matter without the benefit of Mondesir's testimony.
 
 
          In
 addition, the record of Respondent's selective
 participation in this case convinces us that she sought to
 obstruct this proceeding in bad faith. As one example, the
 quid pro quo offer to Mondesir occurred during her window to
 show cause why she should not be suspended on an interim
 basis, which she did not do. As another example, Respondent
 did not respond to the PDJ's order to show cause
 regarding the discovery sanction, in part, on the pretense
 that she was awaiting the PDJ's order concerning
 jurisdiction. As yet another example, rather than move to set
 aside the order entering default as a sanction, Respondent
 submitted an unsworn declaration with her prehearing
 materials in which she decries that the entry of default
 exonerates the People from their burden to prove their case.
 These examples convince us that Respondent acted in bad faith
 in this proceeding to stifle the flow of information to
 prevent the People from making their case. Consequently, we
 are tasked with making findings of fact in a vacuum of
 evidence, frustrating our role as adjudicators. Accordingly,
 we apply this factor and assign it significant weight.
 
 
          We do
 not, however, factor into our analysis Respondent's
 absence at the hearing on the sanctions. We need not
 determine whether her failure to appear was an honest mistake
 or another obstructive act to conclude that she otherwise
 litigated this case in bad faith.
 
 
          Refusal
 to acknowledge wrongful nature of conduct - 9.22(g). The
 People contend that Respondent has refused to acknowledge any
 wrongdoing in this matter. We agree. Respondent's lack of
 meaningful participation evinces a dismissive attitude toward
 this proceeding, which in turn bespeaks a lack of
 accountability for her misconduct. We thus apply this factor
 and accord it average weight.
 
 
          Vulnerability
 of victim - 9.22(h). We apply this factor, even though
 the People do not advocate for it. We do so recognizing that
 immigration clients are generally in a vulnerable position
 due to their reliance on lawyers to help them navigate a
 complex immigration system. Indeed, we do not hesitate to
 conclude that Mondesir's decision to withdraw his request
 for investigation evinces his own precarious situation. We
 would have given this factor significant weight but for the
 Mondesirs' decision not to participate in the proceeding.
 
 
          Substantial
 experience in the practice of law - 9.220 The People ask
 that we apply this factor because Respondent obtained her
 license to practice law in New York in 2003.[13] We agree.
 Factoring in her suspension in New York, Respondent has been
 licensed to practice law for more than twenty years. That
 depth of legal experience and familiarity with her
 professional obligations significantly aggravates her
 misconduct in this case.
 
 10
 
          Mitigating
 Factors
 
 
          Respondent
 has the burden to prove mitigating factors,[14] but she did
 not appear at the hearing on the sanctions to testify and
 make herself available to cross-examination concerning any
 mitigation she might claim. The statements in her unsworn
 declaration do not constitute evidence that can be marshaled
 to meet that burden. Thus, we are left without evidence of
 circumstances that might mitigate her misconduct. We would
 have wished, in particular, to consider her testimony
 concerning an absence of a prior disciplinary record, any
 personal or emotional problems, and the remoteness of her
 prior offenses, as those factors strike us as the most likely
 to merit mitigating weight here.[15] For instance, Respondent
 suggests in her answer and in her unsworn declaration that
 obligations surrounding her father's funeral contributed
 to a communication breakdown with Mondesir. But Respondent
 did not attend the hearing to testify about this or other
 mitigating issues. We therefore cannot apply any factors in
 mitigation.
 
 
          We
 hasten to add, however, that even if we were to credit
 Respondent with significant mitigation based on these
 factors, the effect would not overcome the acute aggravation
 in this case or steer us from the presumptive sanction of
 disbarment.
 
 
          Analysis
 Under ABA Standards and Caselaw
 
 
          The
 Hearing Board heeds the Colorado Supreme Court's
 directive to exercise discretion in imposing a sanction,
 recognizing that "individual circumstances make
 extremely problematic any meaningful comparison of discipline
 ultimately imposed in different cases."[16] As such, the
 Hearing Board must determine the appropriate sanction on a
 case-by-case basis, looking to the ABA Standards for
 guidance in the exercise of that discretion. The ABA
 Standards offers a theoretical framework that
 provides for "the flexibility to select the appropriate
 sanction in [a] particular case" after the Hearing Board
 carefully considers the applicable aggravating and mitigating
 factors.[17]
 
 
          Guided
 by the ABA Standards framework, we begin with a
 presumptive sanction of disbarment under ABA
 Standard 4.11. Because disbarment is the most severe
 sanction available under Colorado's lawyer disciplinary
 regime and the ABA Standards, the clear
 preponderance of four aggravating factors and no mitigators
 confirm that disbarment is the appropriate sanction for
 Respondent's misconduct.
 
 
          Consistent
 with the ABA Standards, Colorado Supreme Court
 caselaw calls for disbarment when a lawyer knowingly converts
 client property and thus injures the client. Knowing
 misappropriation of client funds almost always warrants
 disbarment unless extraordinary
 
 11
 
 mitigating factors apply.[18] Disbarment is also consonant
 with the outcomes in similar discipline cases.[19] In short,
 caselaw confirms that disbarment is the appropriate sanction
 for Respondent's misconduct.
 
 
          IV.
 CONCLUSION
 
 
          Disbarment
 is the most severe discipline we can impose. We do so here
 because the legal authorities that guide us point to
 disbarment as the appropriate sanction for Respondent's
 misconduct during her client's matter. Respondent's
 defense during this proceeding confirms that measure to be
 the correct outcome, as we see in her litigation a mirror to
 her legal practice on behalf of clients. Her dismissive
 approach to defending her law license causes us concern that
 she is similarly cavalier about her clients' legal
 problems, as embodied in her nonchalance when representing
 Mondesir. Further, her disregard for the functions of the
 self-regulating legal profession implicitly subverts the
 profession itself.
 
 
          In
 short, Respondent has shown us no reason for pause before
 imposing discipline. In doing so, we are reminded that the
 practice of law is a profession, not an occupation. The legal
 profession is set apart by the rules of professional conduct
 and the duties that attach to the privilege of holding a
 license to practice law. The rules and duties Respondent
 transgressed during her client's representation warrant
 her disbarment; her subsequent transgressions during this
 disciplinary proceeding demand it.
 
 12
 
          V.
 ORDER
 
 
          The
 Hearing Board ORDERS:
 
 
          1.
 EKAETTE PATTY-ANNE EDDINGS, New York
 attorney registration number 4111217, is
 DISBARRED from the practice of law in
 Colorado. The disbarment will take effect upon issuance of an
 "Order and Notice of Disbarment."[20]
 
 
          2.
 Respondent MUST promptly comply with
 C.R.C.P. 242.32(b)-(e), concerning winding up of affairs,
 notice to current clients, duties owed in litigation matters,
 and notice to other jurisdictions where she is licensed or
 otherwise authorized to practice law.
 
 
          3.
 Within fourteen days of issuance of the "Order and
 Notice of Disbarment," Respondent MUST
 file an affidavit with the PDJ under C.R.C.P. 242.32(f),
 attesting to her compliance with C.R.C.P. 242.32.
 
 
          4. The
 parties MUST file any posthearing motions
 no later than Tuesday, April 28, 2026. Any
 response thereto MUST be filed within seven
 days.
 
 
          5. The
 parties MUST file any application for stay
 pending appeal no later than the date on which the
 notice of appeal is due. Any response thereto
 MUST be filed within seven days.
 
 
          6.
 Respondent MUST pay the costs of this
 proceeding. The People MUST submit a
 statement of costs no later than Tuesday, April 28,
 2026. Any response challenging the reasonableness of
 those costs MUST be filed within seven days
 thereafter.
 
 
           MARY
 KOMINEK LINDEN HEARING BOARD MEMBER, MARK MCINTYRE HEARING
 BOARD MEMBER
 
 
 ---------
 
 
 Notes:
 
 
 [1] Found in ABA Annotated Standards
 for Imposing Lawyer Sanctions (2d ed. 2019).
 
 
 [2] Sapakoff entered his appearance for
 the People on January 16, 2026.
 
 
 [3] At approximately 9:47 a.m., after
 evidence in the case was closed, the PDJ's clerk notified
 the PDJ that Respondent had just telephoned the clerk and
 told him she mistakenly thought the hearing would begin at
 11:00 a.m. On April 7, 2026, the PDJ denied under C.R.C.P.
 60(b)(1) Respondent's motion to reopen the hearing, which
 she filed after she failed to appear.
 
 
 [4] At the hearing on the sanctions, the
 People's investigator, Scherer, testified that Mondesir
 submitted a request for investigation with the People
 regarding Respondent's representation of Mondesir and his
 spouse.
 
 
 [5] Compl. ¶ 33 ([sic] throughout).
 During her testimony, Scherer clarified that Mondesir signed
 his affidavit supporting his request for investigation on
 April 14, 2025, but that he submitted the request for
 investigation on an earlier date.
 
 
 [6] In re Kleinsmlth, 2017 CO
 101, ¶ 14 (citing People v Varallo, 913 P.2d 1,
 10-11 (Colo. 1996)).
 
 
 [7] See In re Roose, 69 P.3d 43,
 46-47 (Colo. 2003).
 
 
 [8] See People v. Silvola, 915
 P.2d 1281, 1284 (Colo. 1996) (deeming a lawyer's repeated
 misconduct over an extended period to be willful).
 
 
 [9] See 8 C.F.R. §§
 1003.103(a)(1), (4) (providing that the Board of Immigration
 Appeals must immediately suspend from federal immigration
 practice any lawyer whom a state high court has suspended on
 an interim basis pending a final resolution of the underlying
 disciplinary matter).
 
 
 [10] ABA Annotated Standards
 Preface at xx.
 
 
 [11] See ABA Standards
 9.21 and 9.31.
 
 
 [12] See Ex. S1 at 361 -64.
 Respondent was reinstated in New York on April 10, 2018. Ex.
 S1 at 361. Under the PDJ's determination under C.R.E.
 201, we take judicial notice that the Board of Immigration
 Appeals reinstated Respondent on August 24, 2018.
 
 
 [13] In the unsworn declaration
 Respondent filed with her prehearing materials, she asserts
 that she has practiced law for forty years in jurisdictions
 on three different continents. We do not treat
 Respondent's statement as evidence, and she has not
 sought to introduce exhibits or testimony showing her
 licensure in other jurisdictions. Even so, we note that any
 additional time as a licensed lawyer beyond our findings
 would merely underscore our decision to apply this
 factor.
 
 
 [14] C.R.C.P. 242.30(b)(3).
 
 
 [15] Addressed, respectively, in ABA
 Standards 9.32(a), 9.32(b), 9.32(c), and
 9.32(m).
 
 
 [16] In re Att'y F., 2012 CO
 57 ¶ 20 {quoting In re Rosen, 198 P.3d 116, 121
 (Colo. 2008)).
 
 
 [17] Id. ¶ 3.
 
 
 [18] Compare People v. Varallo,
 913 P.2d at 10-11 (Colo. 1996) (concluding that a
 lawyer's absence of prior discipline and evidence of good
 character did not overcome the presumption of disbarment when
 the lawyer knowingly used his client's funds for his
 personal benefit), with People v. Lujan, 890 P.2d
 109, 110 (Colo. 1995) (suspending rather than disbarring a
 lawyer who knowingly converted client funds, where
 "extraordinary and tragic factors" applied in
 mitigation, including the emergence of a mental disorder that
 caused the misconduct); see also Kleinsmith, ¶
 14 (reaffirming disbarment as the condign sanction for
 knowing conversion and citing People v. Lavenhar,
 934 P.2d 1355, 1358-59 (Colo. 1997)).
 
 
 [19] See, e.g., People v.
 Caldbeck, 466 P.3d 1174, 1178-79 (Colo. O.P.D.J. 2020)
 (in a default proceeding, disbarring a Pennsylvania-licensed
 lawyer who failed to pursue his clients' immigration
 matters and converted their unearned fees); People v.
 Topper 470 P.3d 821, 823-24, 826 (Colo. O.P.D.J. 2016)
 (in a default proceeding, disbarring a lawyer whose
 misconduct included accepting retainers from two clients,
 performing little to no work on their cases, failing to
 return the clients' unearned fees, and failing to respond
 to one client's attempts to contact the lawyer);
 People v. Heaphy, 470 P.3d 728, 731 (Colo. O.P.D.J.
 2015) (disbarring a lawyer for knowingly converting
 settlement funds belonging to his client and for failing to
 respond to the client's communications, among other
 misconduct).
 
 
 [20] In general, an order and notice of
 sanction will issue thirty-five days after a decision is
 entered under C.R.C.P. 242.31(a)(6). In some instances, the
 order and notice may issue later than the thirty-five days by
 operation of C.R.C.P. 242.35, C.R.C.P. 59, or other
 applicable rules.
 
 
 ---------